People of the State of Illinois, Plaintiff-Appellee, v. Paul H. Musselman, Defendant-Appellant.

Gen. No. 50,514.

First District, First Division.

April 11, 1966.

Rehearing denied May 21, 1966.

Arnold and Kadjan, of Chicago (Daniel N. Kadjan, of counsel), for appellant.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and James B. Klein, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE MURPHY delivered the opinion of the court.

In a complaint defendant was charged with the statutory offense of "unlawful use of weapons." In a bench trial he was found guilty as charged and was fined $200 and costs. The fine and costs were suspended and his "gun confiscated."

The complaint alleged that on or about November 24, 1964, at Burger King parking lot, 180th and Halsted, Glenwood, Illinois, Cook County, defendant "knowingly

carried and possessed a dangerous or deadly weapon (J. C. Higgins 22 cal. rifle), with intent to use the said weapon unlawfully against another," in violation of Chapter 38, Section 24–1(2), Illinois Revised Statutes. This section provides:

"Unlawful Use of Weapons.] (a) A person commits the offense of unlawful use of weapons when he knowingly: . . . (2) Carries or possesses with intent to use the same unlawfully against another, a dagger, dirk, billy, dangerous knife, razor, stiletto or any other dangerous or deadly weapon or instrument of like character; . . . ."

On appeal, defendant contends that "the judgment of the court is contrary to the evidence inasmuch as the State failed to prove beyond a reasonable doubt that defendant had the requisite state of mind (intent) to commit the crime charged."

A police officer, the only witness for the State, testified that on November 24, 1964, at approximately 10:00 p. m., he saw the defendant "in a kneeling position with a '22 rifle with a telescope sight aiming directly at a group of people at the Burger King Restaurant at 185th and Halsted Street. . . . There was a line there and he had the weapon pointed directly at the line"—people "waiting to be served."

The officer further testified that the defendant was approximately 50 to 75 feet from the restaurant when he was pointing his rifle, and after he was arrested, defendant told him he was with a lot of people, although the officer saw no one else there at the time.

On cross-examination, the officer testified that he did not ascertain "whether the weapon was loaded at the time it was pointed," and as far as he knew, "it was not loaded." No ammunition was found in the weapon after the arrest.

456

Defendant testified, "We were going hunting the next day and they have a shot gun too which isn't present and I had those over there. I hadn't fired the 22 in over a year. I was looking at it and looking through the chamber as far as firing. As far as a line, I didn't see any line. There's a little thing on top of the building which I was aiming at." He denied that he was aiming at any people or personnel. He volunteered a statement, "Your honor, he keeps saying I pointed it at a line of people. No one can say I was pointing at a line of people. No one looked down the sight with me. . . . I can't recall whether a line was there. I am there every night. It is just a meeting place."

Defendant argues, "all that the State has proved directly is that the Defendant pointed an empty rifle at a restaurant seventy-five feet away from him." Defendant asserts that the statute requires proof of the specific intent to use the weapon unlawfully against another, and intent must be proved in order to obtain a conviction. Cited in support is section 4–4 of the new Criminal Code, which defines "intent" as follows:

> "A person intends, or acts intentionally or with intent, to accomplish a result or engage in conduct described by the statute defining the offense, when his conscious objective or purpose is to accomplish that result or engage in that conduct."

Cases cited include People v. Fernow, 286 Ill 627, 122 NE 155 (1919), and People v. Murff, 29 Ill2d 303, 194 NE2d 226 (1963).

■ Defendant further argues "that the means employed by defendant would not result in any unlawful use of the weapon against other persons; he could not shoot them, the gun was not loaded, he could not strike them, he was too far away, he did not assault anyone, because there is no testimony demonstrating that he did. Clearly,

457

the State must prove his guilt, he need not prove his innocence. The defendant's only conscious objective, from the evidence presented, is as Defendant testified—to refamiliarize himself with his weapon for the next day's hunt."

The State argues that the defendant's intent was clearly shown by the circumstances adduced at the trial. Cases cited include People v. Johnson, 28 Ill2d 441, 192 NE2d 864 (1963), a burglary case, where it is said (p 443):

> "Intent must ordinarily be proved circumstantially, by inferences drawn from conduct appraised in its factual environment. . . . Like other inferences, this one is grounded in human experience, which justifies the assumption that the unlawful entry was not purposeless, and, in the absence of other proof, indicates theft as the most likely purpose."

The State further argues that the trial court, as the finder of fact, did not believe the defendant's story, and the judgment should be affirmed.

 From our examination of this record, we think the testimony of the police officer that the defendant, at ten o'clock at night, was kneeling and looking down the telescopic sight of a rifle pointed at a group of people, was sufficient credible evidence of "conduct appraised in its factual environment" from which, "grounded in human experience," any reasonable person would be justified in the assumption that defendant's intent was to unlawfully use the rifle, a dangerous or deadly weapon, against the group of waiting customers at whom the rifle was pointed. As stated in the Committee Comments to article 24, Smith-Hurd Illinois Annotated Statutes, ch 38, art 24, p 364:

> "The possession and use of weapons inherently dangerous to human life constitutes a sufficient

458

hazard to society to call for prohibition unless there appears appropriate justification created by special circumstances."

Proof that the rifle was loaded should not be required before an inference can be drawn that defendant intended to use it unlawfully. See People v. Clark, 30 Ill2d 216, 195 NE2d 631 (1964), at p 219:

"Here, there was credible evidence fully establishing defendant's guilt of the crime charged and, what is more, the trial court could properly consider the improbabilities in defendant's explanation and his presence at the scene of the offense."

We hold that the evidence here was sufficient proof of the offense charged in the instant complaint. For the reasons given, the judgment is affirmed.

Affirmed.

KLUCZYNSKI, P. J. and BURMAN, J., concur.