**The People of the State of Illinois, Plaintiff-Appellee,
v. Orville McCoy, Defendant-Appellant.**

**Gen. No. 10,931.**

Fourth District.

November 12, 1968.

CRAVEN, J., dissenting.

Hagin Harper, of Champaign, for appellant.

■

No brief for appellee.

SMITH, P. J.

Convicted in a bench trial of involuntary manslaughter for conduct arising out of an automobile accident, the defendant pleaded not guilty, waived a jury trial, was found guilty by the court and admitted to probation. One of the probationary terms was a one-year sentence to the Illinois State Farm at Vandalia. Defendant appeals not only from the judgment of guilty, but also from the order granting probation and "denying the defendant the State's recommendation that a thirty-day jail sentence be imposed." His motion for new trial attacks the judgment of guilty on the ground that "the State did not prove the guilt of the defendant beyond a reasonable doubt."

■ On oral argument in this court, defense counsel suggested that we should treat the "not guilty" plea as a tacit "guilty" plea and clearly indicated that the spectre of a wrongful death action was either pending, impending or working in the hinterlands and that it casts its spell over this entire proceedings. Patently in this court, we cannot treat a not guilty plea as a "tacit" plea of guilty. "The law of Illinois does not recognize a 'provisional or pro forma' plea. . . . (People v. Miller, 264 Ill 148.)" People v. Grabowski, 12 Ill2d 462, 464, 147 NE2d 49, 50. There was a not guilty plea in the trial court and that is where it must remain on this record on review.

Defendant's motion for new trial attacks the judgment of guilty on the ground that "the State did not prove the guilt of the defendant beyond a reasonable doubt." In his brief to the court accompanying the motion for new trial, he sets up as the sole ground that the only evidence heard by the court was hearsay evidence; that such evidence has no probative value, and that accordingly there was no evidence upon which the court could find (1) that a crime was committed or (2) that the accused did it. The

sole question therefore is whether uncontradicted hearsay testimony received without objection and standing alone may establish guilt beyond a reasonable doubt.

When the case was called for trial, the court inquired as to whether or not both sides were ready to proceed. Defense counsel said, "I might say to the Court, off the record. . . ." (Not reported.) The State's Attorney then said, "Both sides are ready and I would like to be sworn." He then testified that he had attended the coroner's inquest, heard the witnesses testify at that inquest and had also made some independent investigation of the circumstances himself. He related the occurrence events as told to him, gave the names of all the witnesses, stated that these facts could be established by evidence that is not hearsay and rested. The facts related, if competent and true, fully justify the court's decision in the case and its disposition.

The defense counsel then stated, "The defendant rests." The record shows that both parties waived argument, the court found the defendant guilty of involuntary manslaughter and entered judgment on that finding. Defendant moved for probation. On May 26, the matter came on on the petition for probation. No evidence was offered by either side, but both attorneys argued the merits of probation. The probation officer's report was filed that morning with a recommendation for probation and a "short sentence." After reviewing the circumstances, the court then stated that he saw no reason why he should not grant probation, but that "I think I should impose as a condition of this probation a very decisive jail sentence or a state farm sentence. Now what that should be, I don't know . . . but it can't be less than 1 year." The defense then said, "I wonder if we might see the Court in chambers? With the State's Attorney." The Court, "I will be glad to talk to you. I want to take all these things in consideration." Whatever may have transpired in chambers

is not reported, but its result was an order admitting the defendant to probation with a term of 1 year at the Illinois State Farm at Vandalia.

■ The statement that hearsay testimony has no probative value and has no tendency to prove a substantive fact is much too broad. Evidence received under the many exceptions to the hearsay rule does not change its name; it is still hearsay. It is, nevertheless, admissible and it does have probative value. Originally stigmatized as a sibling of the gossip family, a general dubiety arose about its accuracy and its truth and it was denied admissiblity. Through permissive and restrictive legislative rules of evidence, judicial decisions, necessity, the experience of mankind, the passage of time and where the circumstances under which the statements are made establish that the probability of its truth and its accuracy outweighs its heritage of unreliability, the rule against admissibility has been steadily eroded. The fact that such testimony is received without objection has no effect on its inherent quality and adds nothing to its probative value. People v. Harrison, 25 Ill2d 407, 185 NE2d 244. The fundamental purpose of the hearsay rule was and is to evaluate the quality of the evidence by subjecting the source of the assertion to cross-examination by the party against whom it is offered. Absent the opportunity for cross-examination and in the face of an appropriate objection, the objection must be sustained and the proffered evidence rejected. See discussion in People v. Carpenter, 28 Ill2d 116, 190 NE2d 738.

In 79 ALR2d 897, II, § 3, it is stated:

> "It appears to be the general rule, supported by the overwhelming weight of authority, that where inadmissible hearsay evidence is admitted without objection, it may properly be considered in determining the facts, the only question being with regard to how much weight should be accorded thereto."

In Town of Cicero v. Industrial Commission, 404 Ill 487, 89 NE2d 354, 360, it is stated:

". . . Testimony, although hearsay and incompetent, if received without objection is to be considered and given its natural probative effect as if it were in law admissible. . . ."

The rationale of this rule is aptly stated in Poluski v. Glen Alden Coal Co., 286 Pa 473, 133 A 819, 79 ALR2d, pp 911, 912, in these words:

". . . Hearsay evidence may accurately portray a given set of circumstances. The reasons which exclude such a portrayal do not detract from its truth or accurateness. These reasons are the legal barriers which have been erected by the law, and which, in the interest of justice, the parties may move aside. Under this reasoning, the evidence is then competent to the full extent of such probative value as it may have under all the circumstances."

Received into evidence without objection, this evidence does have probative value. How much? The trial court examined, tested and weighed it. In the crucible in which it was presented to him, he found its accuracy and its authenticity without blemish and felt and found that it was sufficient to prove the guilt of the defendant beyond a reasonable doubt. It would be fictional fantasy to conclude that anyone in the courtroom on the day this evidence was presented, including the defendant and his counsel, doubted or disputed but that the recitation of the occurrence events did accurately and truthfully state the facts. Nothing in this record—save the unsavory reputation of hearsay testimony—weakens this conclusion. The trial court's vision was clear and his scales were accurate.

This record must be appraised in its unusual and unique factual background. The indictment charged involun-

tary manslaughter through the operation of a motor vehicle in a reckless manner. It is thus clear that the spectre of a wrongful death action either pending, impending or lurking in the hinterlands casts it spell over this proceedings. With commendable forthrightness, it was so indicated on oral arguments in this court. There was no objection to the testimony of the State's Attorney, there was no motion to strike it as hearsay, there was no motion for a verdict of not guilty because of its insufficiency. Both sides waived argument on the issue of guilt. There was a motion for admission to probation; there was a hearing on that motion with neither side offering any evidence, with both sides arguing for probation, and with the only basic issue presented being whether or not there should be confinement as a part of the probation order and if so, how long. The only disenchantment came in the length of the jail sentence. In its absence, there is little doubt but that this case would have been laid to rest in the trial court.

▮▮▮ In this court, the defendant now seeks only an absolute discharge or in the alternative a new trial. It is almost universally recognized in this State that an accused may by stipulation waive the necessity of proof of all or any part of the case which the People have alleged against him. Having done so, he cannot complain in this court of evidence which he has stipulated into the record. People v. Hare, 25 Ill2d 321, 324, 185 NE2d 178, 179. Citing People v. Polk, 19 Ill2d 310, 167 NE2d 185; People v. Pierce, 387 Ill 608, 57 NE2d 345; People v. Malin, 372 Ill 422, 24 NE2d 349. Stipulated facts may be hearsay, but are accepted as the truth because they are stipulated to in open court and are treated either as admissions by the defendant or as the mutual agreement of the parties as to the truth. It would be traveling on a treadmill to return this case to the trial court for proof of facts accepted as true by everyone. Neither in the trial court nor in this court is it remotely suggested by

the defendant that the facts recited by the State's Attorney as to the occurrence events are untrue. The proceedings was patently an attempt to dispose of an unpleasant matter in a pleasant manner. While purportedly on its face an adversary proceeding, it was in truth and in fact an "agreed hearing." There was no agreement either as to probation or a jail sentence. The probation officer recommended probation, the State's Attorney did not oppose it, and both attorneys discussed only the desirability of or the necessity for a jail sentence. There was no seduction or betrayal of the defendant by the State. It warps reality beyond recognition to assert that the acquiescence in, consent to, approval of or a waiver by the defendant of either the admissibility of or the weight attributable to this testimony is not shown by this record. Both the procedure and the result, save only the jail sentence, were in effect and in fact mutually agreed to. Neither due process, fair play nor simple justice require us to exonerate this defendant from the procedure and the result to which he knowingly, willingly, and we submit, intentionally subscribed. In so doing, we do not excommunicate from criminal proceedings either the rules of evidence or the requirement that the defendant's guilt be established beyond a reasonable doubt. We impose no onerous burden on the defendant. We require him only to use the procedural tools available to him in the trial court before complaining in this court. He can't complain of the weeds in the garden which he joined in planting if he elects, as he did here, not to use the hoe. The judgment is affirmed.

Affirmed.

TRAPP, J., concurring.

CRAVEN, J., dissenting.

CRAVEN, J., dissenting:

Although it is difficult to conceive of a criminal case in which there is no evidence of the crime charged nor of the defendant's guilt other than pure hearsay, this is such a case. My colleagues affirm the trial court, sitting without a jury, in finding the defendant guilty, with the record in such an inconceivable state. I cannot agree with either the result reached nor the route traveled.

It is, of course, fundamental that in a criminal proceeding the accused is presumed innocent until his guilt is established. The burden of proof is upon the prosecution to establish beyond all reasonable doubt the fact of the crime and the defendant's criminal responsibility for its commission. The burden of proof does not shift, and inaction by the defendant can never be a replacement for the affirmative burden on the prosecution.

In this case the defendant is charged with involuntary manslaughter, being section 9–3 of chapter 38, Ill Rev Stats 1965, the specifics of the charge being that the defendant, "acting in a reckless manner, on October 8, 1966, struck and killed Nellie LeCrone, with an automobile, without lawful justification." The defendant entered a plea of not guilty. The cause was set for trial on May 11, 1967. The defendant waived jury trial. Both the defense and prosecution announced that they were ready to proceed. The state's attorney, at his request, was sworn and testified. His testimony, the only testimony in the case, is as follows:

> ". . . I am State's Attorney of this County. On the eighth of October, 1966, Orville McCoy, who is the defendant in this proceeding, and who is the gentleman sitting at the counsel table here in the Court Room, was driving an automobile in a southernly direction from Monticello, apparently headed toward Bement at about ten o'clock in the morning. I attended the Coroner's inquest, which was held in Bement, on November third, and heard the witnesses

testify at that inquest. I also made some independent investigation of the circumstances concerning this incident. While Mr. McCoy was driving in a southernly direction he crossed the center line of the pavement so that he was driving on the wrong side of the pavement, and narrowly missed having an accident with a Mrs. Scrimager, who was forced off the road in order to avoid a head-on collision with the car being driven by Mr. McCoy. The next car was being driven by a daughter of Mrs. LeCrone and while the car being driven by Mr. McCoy was also on the left-hand side of the road there was a head-on collision between his car and the LeCrone car, and as a result of that collision Mrs. LeCrone died. My further investigation brought out the fact that before Mr. McCoy left Monticello he had been in a local tavern, The Corner Tavern, and had two shots of whiskey with beer chasers, and this matter was presented to the Grand Jury and an indictment returned indicting him for involuntary manslaughter. These facts could be established by evidence, which is not hearsay evidence, by Michael William LeCrone, who was a passenger in the LeCrone car, by Clifford Scrimager, who was on the highway and saw Mr. McCoy driving in an erratic fashion, by Susan Scrimager who was also driving on the highway, and was forced off the highway in order to avoid a collision with Mr. McCoy, by Donald Blickensderfer, who was a State Trooper, who investigated the accident after it occurred, by Margaret A. Camden who was the driver of the automobile in which Nellie LeCrone was a passenger, and that is all I care to say at this time."

No objection to this narrative recitation by the state's attorney was made by defense counsel and no question was raised as to the propriety of the prosecuting attorney's testifying. No other evidence was offered by

77

the People and none was offered by the defense. The only pertinent thing in the record attributable to the defense relevant to the merits of the proceeding is the one phrase that "the defense rests, . . . ." Both sides waived argument and the court found the defendant guilty.

The foregoing is the entire record other than those portions of the record relating to the probation proceedings, and those are irrelevant to the issue in this case as I see it.

The issue here, and the only issue, is whether hearsay evidence, admitted without objection and unsupported by any other evidence of any kind or character, will support a finding of guilty in a criminal case. I think it will not.

Hearsay evidence is excluded when objection is made because it is not reliable evidence. It is indeed and in fact a prominent member, if not the patriarch, of the gossip or rumor family. "Its intrinsic weakness, its incompetency to satisfy the mind of the existence of the fact, and the frauds which might be practiced under its cover combine to support the rule that hearsay is totally inadmissible." Queen v. Hepburn, 11 US 290, 3 L Ed 348 (1813). This is the apt language of Mr. Chief Justice John Marshall. In addition, the inability to subject hearsay to the cleansing effect of cross-examination is one of the fundamental reasons for its judicial rejection. See People v. Carpenter, 28 Ill2d 116, 190 NE2d 738 (1963).

This rule is a rule of evidence. It can be, and in this case was, waived. The effect of the waiver means only that the hearsay evidence is admitted and may be considered. Once it's admitted, what is its weight, its worth, what is its reliability? Certainly it is not enough to prove guilt beyond a reasonable doubt.

The rule applicable to the great majority of jurisdictions is stated:

78

"Hearsay evidence, admitted without objection, has been held to have probative value, and should be considered and given its natural probative effect, subject to any infirmative suggestion due to its inherent weakness, and may establish a material fact in issue, support a finding, and sustain a verdict or judgment. However, such evidence should be given only the weight to which it is entitled, and the failure to object adds no weight to the evidence if intrinsically it had none. In some jurisdictions it has been held that hearsay evidence, although admitted without objection, is without probative force, is incompetent to establish a material fact in issue, and will not sustain a finding or sustain a verdict or judgment when unsupported by other evidence." 88 CJS, Trial, § 153. (Citations omitted.) See also 30 Am Jur2d, Evidence, § 1103; 4 Jones, Evidence, § 984 (5th ed 1958); and the annotation on the subject in 79 ALR2d 890.

Although many cases are cited and discussed in the annotation, none suggests that hearsay alone will support a criminal felony conviction. The relevant Illinois cases certainly do not lead one to that conclusion.

In Grier v. Barkley, 182 Ill App 541, the court held that hearsay evidence to the effect that a loan was made by a husband to his deceased wife in consideration of her signing a contract to sell certain land was not proof of such fact even though the evidence was admitted without objection.

Mr. Justice Solfisburg, speaking for the Appellate Court Second District, in Looby v. Buck, 20 Ill App2d 156, 155 NE2d 641, 644 (2nd Dist 1959), observed that "A statement by a witness whose testimony is based not upon personal knowledge but upon hearsay has no tendency to prove anything." The court cited 2 Wigmore on Evidence (3rd ed, 1940), § 657.

In People v. Harrison, 25 Ill2d 407, 185 NE2d 244 (1962), the court recognized the unreliability of hearsay and observed that its probative value was not enhanced by the fact that it was received without objection.

One Illinois Appellate case, Arkansas Sweet Potato Growers' Exchange v. Wignall-Moore Co., 249 Ill App 34, held that unobjected to hearsay was sufficient to establish the graded rating of some potatoes. In People v. Jones, 382 Ill 603, 48 NE2d 364 (1943), hearsay evidence as to corporate existence was held sufficient to establish that fact.

In cases where the burden of proof is by the preponderance of the evidence, hearsay may be sufficient, if believed by the trier of fact, to establish a fact in controversy. On appeal hearsay may be sufficient to support a civil judgment. Carraway v. Johnson, 63 Wash2d 212, 386 P2d 420. However, if the quantum of proof required is "substantial evidence," hearsay alone is not sufficient. There must be a residuum of legal evidence or evidence of some probative value. William H. Van Vleck, Inc. v. Klein, 50 Misc2d 622, 271 NYS2d 64.

In Benjamin v. Benjamin (Mo), 370 SW2d 639 (1963), the court indicated that if a social worker report, admittedly hearsay, had been the only basis of a child custody award, the court would seriously consider reversal.

While I may not be in accord with the minority view, as evidenced by Texas, Georgia and some New York cases, that hearsay has no probative value and will not support a finding of fact, no case has been cited that suggests that hearsay, whatever the source, can, unaided by some residuum of reliable evidence, support a finding of guilty in a felony case.

The majority opinion discusses the fact that this record is in such an unorthodox posture possibly because of a civil action for wrongful death either pending or im-

pending. That, to me, has no bearing on the issue and certainly does not excuse the unorthodox procedure here employed. The defendant here pleaded not guilty and the burden of proof was on the prosecution. A wrongful death case, actual or contemplated, does not alter the criminal proceeding, nor affect it in any way.

I find nothing in the record that justifies a conclusion that the defendant "stipulated" to anything. The failure to object to the narrative statement of hearsay renders it admissible, but such failure to object is not a stipulation as to its truth. The failure of the defendant to object when objection should have been imposed, as a matter of reflex, cannot be translated so as to make passive conduct active and the equivalent of a stipulation as to the truth of the narrative statement. To do so is to effectively nullify the plea of not guilty and to create a provisional or pro forma plea or a nolo contendere plea, both of which are alien to the criminal law of this jurisdiction. People v. Grabowski, 12 Ill2d 462, 147 NE2d 49 (1958).

There is in this case an undisposed of motion for a new trial, alleging as the grounds therefor that there was a failure to prove the defendant guilty beyond a reasonable doubt. Failure to prove guilt beyond a reasonable doubt is not grounds for a new trial, and even if we would like to send this case back for a new trial with a fresh start, we would be precluded from doing so. See the thorough discussion of this point by Mr. Justice English in the supplemental opinion on petition for rehearing in People v. Brown, 99 Ill App2d 281, 241 NE2d 653 (1st Dist 1968).

It is regrettable that the state's attorney did not see fit either to file a brief or to argue this matter orally before this court. This failure leaves the judgment of the trial court without the support of a brief and argument and, in part at least, casts this court in the dual

role of advocate and judge. This failure could well justify a reversal without consideration of the merits. See People v. Spinelli, 83 Ill App2d 391, 227 NE2d 779 (2nd Dist 1967); People v. Keeney, 96 Ill App2d 323, 238 NE 2d 614 (4th Dist 1968). Two reasons exist, therefore, that in my view compel a reversal. I find none that justify an affirmance. Accordingly, I dissent.