THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* CHARLES KING, Defendant-Appellant.

Fourth District   No. 14303

Opinion filed March 13, 1978.

CRAVEN, J., concurring in part and dissenting in part.

Richard J. Wilson and Gregory K. Harris, both of State Appellate Defender's Office, of Springfield, for appellant.

Norbert J. Goetten, State's Attorney, of Carrollton (Robert C. Perry, of State's Attorneys. Appellate Service Commission, of counsel), for the People.

Mr. PRESIDING JUSTICE GREEN delivered the opinion of the court:
After trial by jury in the circuit court of Greene County, defendant Charles King was found guilty of burglary, unlawful use of weapons and not having a firearm owner's identification card. The court imposed sentences of imprisonment of 3 to 9 years for burglary and 364 days for each of the other offenses with each to run concurrently with the others. Defendant appeals his convictions and sentences. We affirm the burglary conviction but reduce the sentence to 1 to 3 years imprisonment. We reverse the unlawful use of weapons conviction and sentence and affirm the conviction and sentence for not having a firearm owner's identification card.

A substantial number of claims of error are cited. We will discuss most of them in connection with the charges to which they are applicable.

One claim, however, is applicable to all charges. Upon defendant's request for appointment of counsel, the court appointed Peter Drummond. Before trial, that counsel called to the court's attention that he worked for a lawyer who was an assistant attorney general for the State assigned solely to inheritance tax matters. He also reminded the court of the ruling of this court in *People v. Cross* (1975), 30 Ill. App. 3d

199, 331 N.E.2d 643, that a *per se* conflict of interest, requiring no proof of prejudice, occurs when a lawyer who is an assistant attorney general, regardless of his status or assignment, takes on the representation of a person charged with a State criminal offense.

In the presence of both counsel and the defendant, the court informed the defendant of his attorney's relationship to his employer and the employer's status as a special assistant attorney general. After some discussion, the court indicated that it would discharge defense counsel and make a new appointment. Later and after defendant had complained that he wanted Mr. Drummond as his attorney and stated that he thought he would be prejudiced by not being allowed to keep him, the court decided to permit defendant to file a written waiver of the conflict of interest and to allow Mr. Drummond to remain as defendant's attorney.

The trial judge had a difficult decision to make. In *People v. Grigsby* (1977), 47 Ill. App. 3d 812, 365 N.E.2d 481, it was recognized that a disqualification of one member of a law firm disqualified all of the other members. In *Cross,* we indicated that the conflict of interest might be waived by the client as did the supreme court in *People v. Coslet* (1977), 67 Ill. 2d 127, 364 N.E.2d 67. In *People v. Stoval* (1968), 40 Ill. 2d 109, 239 N.E.2d 441, where defendant's appointed counsel's law firm represented the victims of the burglary for which defendant was charged, the court stated,

> "The difficulty in appropriately advising an accused of this right almost directs that counsel, especially one appointed, be free from any such conflict."(40 Ill. 2d 109, 114, 239 N.E.2d 441, 444.)

On the other hand, in *People v. Friedrich* (1960), 20 Ill. 2d 240, 169 N.E.2d 752, the trial court's refusal to allow the attorney of defendant's choice to represent defendant because of a conflict of interest was held to be reversible error. The trial judge's dilemma here was increased because, on the one hand, Mr. Drummond was court-appointed counsel but on the other hand defendant had made a strong, apparently spontaneous demand that Drummond be permitted to continue.

In *Cross,* we indicated that the conflict arose because the Attorney General assists in prosecutions in certain cases and represents the prosecution in cases before the supreme court. In explaining the conflict of interest to the defendant in the instant case, nothing was said about those reasons for the conflict. Rather, the explanation centered upon the fact that Mr. Drummond's employer who was a special assistant attorney general would ultimately share in Mr. Drummond's fee to be paid by the county. The proper procedure would have been for the explanation given to the defendant to have included a statement of the functions of the Attorney General in criminal cases.

In *Stoval,* in explaining the difficulty of a proper waiver being obtained,

the court analogized the situation to the waiver of counsel and quoted from *Johnson v. Zerbst* (1938), 304 U.S. 458, 464, 82 L. Ed. 1461, 1466, 58 S. Ct. 1019, 1023, part of which quote stated, " 'The determination of whether there has been an intelligent waiver of the right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.' " 40 Ill. 2d 109, 114, 239 N.E.2d 441, 444.

■■ Various cases have been cited to us ruling upon the validity of attempted waiver by an accused of his counsel's conflict of interest. In no case except *Friederich* has the accused's desire to retain existing counsel been shown to be as strong as here. Although he had only a 10th grade education, we believe that he understood that Mr. Drummond had a commitment, through his law firm, that in a very indirect way could impair his devotion to defendant's interests but that he, nevertheless, very much wanted Mr. Drummond's skillful and energetic service to continue. Under all the facts and circumstances, we conclude that defendant knowingly and understandingly waived that conflict of interest.

Defendant argues that the State failed to prove that he did not possess a valid firearm owner's identification card. There is no dispute that the evidence was sufficient to prove that defendant was required to have such a card. The proof that defendant did not have the card came from the testimony of a section supervisor of the State agency required by statute to keep the records of the issuance of the identification cards. This witness stated that he had checked the agency's records and found that defendant had no card on August 5, 1976, the alleged date of the offense. The only objection made to this testimony was that the best evidence of defendant's possession of such a card would have been the testimony of the arresting officer that defendant did not possess a card when arrested. On cross-examination, the witness revealed that he had checked the records and found that on August 5, 1976, 38 persons bearing the name Charles King had cards. He then checked the birth dates listed upon the records as the birth dates of the card holders with the birth date told him by the state's attorney to be that of defendant and found that none of the cards had been issued to a person having that birth date. Defendant did not move to strike this testimony.

■■ The defendant maintains that the proof is insufficient to show that defendant was not one of the Charles Kings listed in the agency records. He draws analogy to cases holding that the fact that a criminal defendant bears the same name as a person listed in a document is not sufficient proof to show that the defendant is that person. Here, there was the further factor that the record of birth dates recorded for the Charles Kings listed in the records did not correspond to that which the witness had learned by hearsay to belong to the defendant. Had objection been

made to the evidence based upon the hearsay statement of the state's attorney, the evidence should have been stricken. Because no objection was made, the evidence is before the court for whatever probative value it may have (*People v. Akis* (1976), 63 Ill. 2d 296, 347 N.E.2d 733). Here the probative value of the hearsay was sufficient for the jury to have determined that defendant was not one of the Charles Kings to whom an identification card had been issued.

The unlawful use of weapons conviction arose from a count which alleged that the defendant "knowingly carried and possessed with intent to use unlawfully against another, a .22 caliber rifle Winchester automatic, a dangerous weapon." A defense motion to dismiss the count was denied. Defendant maintained then and continues to maintain on appeal that the count does not state an offense.

The State contends that the count states an offense under section 24—1(a)(2) of the Criminal Code (Ill. Rev. Stat. 1975, ch. 38, par. 24—1(a)(2)) which provides,

"A person commits the offense of unlawful use of weapons when he knowingly:

\* \* \*

(2) Carries or possesses with intent to use the same unlawfully against another, a dagger, dirk, billy, dangerous knife, razor, stilletto, broken bottle or other piece of glass, or any other dangerous or deadly weapon or instrument of like character."

■■ The State argues that the phrase "any other dangerous or deadly weapon" includes firearms and that "of like character" applies only to "instrument." It cites a rule of construction which says that qualifying words are to be applied only to the immediately preceding phrase or word, unless legislative intent requires otherwise. (*People v. Thomas* (1970), 45 Ill. 2d 68, 256 N.E.2d 794.) The State argues that the legislative intent is to prohibit possession of inherently dangerous weapons unless there is an appropriate justification. In *People v. Musselman* (1966), 69 Ill. App. 2d 454, 217 N.E.2d 420, the defendant was convicted under this section on possession of a rifle, but the question raised here was not raised in *Musselman*. To interpret the phrase as defendant argues is to leave an unintended gap in the statutory scheme, contends the State.

We agree with defendant, however, that the legislative scheme indicates an intention to deal with firearms only in subsection 4 *et seq.* of section 24—1(a) which prohibits the use, possession or concealment of firearms under various circumstances. In *People v. Sheldon* (1926), 322 Ill. 70, 152 N.E. 567, the court ruled that under the rule of *ejusdem generis* a similar statutory provision also containing an "instrument of like character" clause did not cover the possession of firearms. The State maintains that precedent to be no longer applicable because the statute

has been integrated into a more comprehensive scheme since then. Even at that time, however, a separate section of the same statute prohibited the possession of a concealed firearm. Although we must yield to a showing of contra legislative intent (*People v. Suttles* (1959), 15 Ill. 2d 521, 155 N.E.2d 607), we see no such contrary intention here. Various subsections of section 24—1(a) refer specifically to firearms. They are undoubtedly the most dangerous of deadly weapons. For the legislature to have intended to include them within subsection (2) by a mere reference to "other dangerous or deadly weapons or instruments of like character" after making specific reference to daggers, dirks, etc. would seem very unlikely. We conclude that the count purporting to charge this offense was insufficient as a matter of law.

The balance of the claims of defendant concern only the burglary charge. They are that: (1) a reasonable doubt exists as to defendant's intent to commit a felony in entering the house described in the charge, (2) the court erred in refusing to give IPI Criminal No. 3.02 with the second paragraph included, (3) the court erred in failing to incorporate the defense instruction on voluntary intoxication in the elements of the offense instruction, (4) the court erred in not granting a mistrial when it was determined that the State had failed to give defendant discovery of an oral statement alleged to have been made by defendant, and (5) the sentence was excessive.

A short review of the evidence is necessary to discuss these issues. All evidence was presented by the State and was not in substantial dispute. Ray Allen, a deputy sheriff of Greene County who like defendant, lived in Eldred, had been a friend of defendant's and had tried to help him with his drinking problems. On August 5, 1976, after borrowing a rifle, defendant told several people that Allen was trying to break up his marriage by making some false charges against him and that he was going to confront Allen with these charges and shoot him if he didn't retract them. Defendant persuaded Robert Moss to drive him to Allen's home. Moss complied out of fear but tried to talk defendant out of his plan. Moss let defendant out of his car at Allen's house. Defendant told Moss that he was going in and wait. Moss left. Sometime later, defendant told others that he had gone to Allen's to shoot him but had backed out and left his rifle there. Some persons then went to Allen's house and saw the rifle lying on Allen's bed. Later that same evening defendant saw Allen and told him that he had gone to his house to kill Allen but had changed his mind and wanted to get his gun back. He and Allen then went to Allen's house and defendant obtained the rifle.

■■ ■ Defendant's contention that defendant's intent in entering Allen's house was not proved beyond a reasonable doubt and his contention that the court erred in refusing to give IPI Criminal No. 3.02

with the second paragraph added, which provided that defendant should not be found guilty unless "the circumstances proved exclude every reasonable theory of innocence," are both based upon the assumption that all of the evidence was circumstantial. If so, the defendant was entitled to the instruction and a conviction would not stand if a reasonable hypothesis of innocence existed. However, testimony of an admission of a defendant is direct evidence (*People v. Brown* (1974), 56 Ill. 2d 312, 307 N.E.2d 356, *rev'd and rem. on other grounds*, 422 U.S. 590, 45 L. Ed. 2d 416, 95 S. Ct. 2254). Moss testified that prior to his leaving defendant at Allen's, defendant told him he was going into the house and wait for Allen. Mr. Allen testified that defendant told him that he waited in Allen's house for 2½ hours before deciding that Allen was not coming home. Accordingly, this was clearly direct evidence of defendant's entry into the house, an element of the offense. Furthermore, the statement to Moss would appear to be direct evidence of defendant's intention upon entering, and taken with defendant's prior statements to Moss, could only be interpreted as a statement that defendant was going to wait in the house for Allen and threaten him with shooting if he did not retract his charges. Accordingly, there was sufficient evidence to submit the charge to the jury and no error in refusing the instruction.

The trial court refused defendant's issues instruction which incorporated elements of IPI Criminal No. 25.03 concerning the effect of involuntary intoxication. Defendant mistakenly refers to IPI Criminal No. 25.03 as being applicable to voluntary intoxication. There was no evidence that defendant was involuntarily intoxicated and the refusal of the instruction was not error.

The pretrial discovery order required the State to furnish to the defendant all relevant written or recorded statements of the State's intended witnesses "including memoranda containing substantially verbatim reports of their oral statements." On direct examination, the witness Moss testified that defendant had told him that he, defendant, intended to enter Allen's house. On cross-examination, Moss stated that he had told the prosecutor of this on the previous day. The defendant then moved for a mistrial on the grounds that no verbatim report of the statement had been given him. The prosecutor stated that he could not recall Moss having told him of this. The trial court denied the motion.

No showing was made that any memoranda containing substantially verbatim reports of the statement had been made. Defendant maintains that such a memoranda should have been made and furnished to defendant. He cites *People v. Manley* (1974), 19 Ill. App. 3d 365, 311 N.E.2d 593, and *People v. Rand* (1975), 29 Ill. App. 3d 873, 331 N.E.2d 15, where convictions were reversed for the State's failure to furnish discovery. *Manley* is distinguishable in that there the court's discovery

order had required that substantially verbatim memoranda of witnesses' oral statements be made and furnished to defendant. *Rand* was based upon the failure of the State to comply with the court's pretrial order requiring the State to inform defendant of the substance of and witnesses to any statements given by him. The pretrial order in this case made similar requirements and the failure to comply with that portion of the order should have been the error cited here. Because objection was not made on that ground here and because no request for more moderate, corrective action such as the granting of a continuance was made, we find no reversible error in the ruling of the trial court denying a mistrial.

■■ The prosecution of the case was delayed while negotiations took place to see if the defendant would accept a State's offer of probation upon a plea of guilty if the defendant accepted treatment for his drinking problem. Defendant refused and stood on his plea of not guilty. In view of defendant's lack of a substantial criminal record and commendable conduct in withdrawing from his planned attack, we conclude the severity of the burglary sentence to be an abuse of discretion and reduce that sentence to 1 to 3 years imprisonment.

The conviction and sentence for not having a valid firearm owner's identification card are affirmed. The conviction and sentence for unlawful use of weapons are reversed. The conviction for burglary is affirmed and the sentence on that conviction reduced to 1 to 3 years imprisonment. The case is remanded for issuance of an amended mittimus.

Affirmed in part, reversed in part and remanded.

WEBBER, J., concurs.

Mr. JUSTICE CRAVEN, concurring in part and dissenting in part:

I agree with the results and reasoning of the majority opinion in all respects except as to the conviction for failure to have a valid firearm owner's identification card. The only evidence of that offense is that an employee concerned with the keeping of records of the issuance of firearm owner's identification cards testified that cards had been issued to some 38 people who had the name of Charles King and that the State's Attorney had told him the birthday of the defendant Charles King and that none of the 38 Charles Kings listed in his records had that birthday, leading to the conclusion that a card had not been issued to the defendant and that, therefore, he was guilty. A proper objection was not made to this testimony which was, and is, classic hearsay. Thus we have the pure and simple question of the probative value of unobjected-to hearsay testimony. The failure to object renders the testimony admissible, but not very weighty.

In *People v. McCoy* (1968), 101 Ill. App. 2d 69, 242 N.E.2d 4, we had another case wherein the sole evidence of guilt was unobjected-to hearsay. The majority affirmed the conviction. The supreme court granted leave to appeal and reversed (*People v. McCoy* (1970), 44 Ill. 2d 458, 256 N.E.2d 449), and while the opinion reversing did not specifically hold that unobjected-to hearsay evidence standing alone was insufficient to convict, the court did say that the evidence there found was not sufficient to convict. The majority and dissenting opinion of this court in *McCoy* and the majority and dissenting opinion of the supreme court probably say all that can be meaningfully said upon this issue.

For the reasons expressed in my dissent in *McCoy*, I dissent here to the conviction based upon unobjected-to hearsy.