THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ROBERT CHAPMAN, Defendant-Appellant.

Third District   No. 78-342

Opinion filed July 11, 1979.

Martin Rudman, of Herschbach, Tracy, Johnson, Bertani and Wilson, of Joliet, for appellant.

Edward F. Petka, State's Attorney, of Joliet (John X. Breslin, of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. PRESIDING JUSTICE SCOTT delivered the opinion of the court:

After trial by jury in Will County the defendant Robert Chapman was convicted of the offense of armed robbery and sentenced to a term of imprisonment of not less than 4 nor more than 5 years.

The facts pertinent to this appeal establish that the defendant, along with James Livsey, on June 16, 1977, attempted to perpetrate an armed robbery of the office of the Farmers Insurance Group located at New Lenox, Illinois. Upon entering the office the defendant and Livsey first encountered an employee, Janet Dutter. Livsey was armed with a gun which he first pointed at Mrs. Dutter and subsequently put against her back as he moved her towards and into a closet. While in the closet Mrs. Dutter heard Livsey asking another employee, Mr. Englert, where the money was, and then, in reply to a question by Livsey, another voice replied, "I have both barrels cocked." Livsey then came to the closet and took $467 plus various identification cards from Mrs. Dutter's wallet.

Livsey and his companion, who was later established as being the defendant, left the scene of the crime. A chase ensued which resulted in the arrest of both individuals.

On the same day a search by the sheriff's department resulted in the finding of Mrs. Dutter's identification cards and a .38-caliber revolver along the side of the road where the law enforcement officials had pursued Livsey and the defendant as they attempted to make their escape. The question as to the identification of Livsey and the defendant being the individuals who were present at the scene of the robbery is not an issue in this appeal. During the course of the defendant's trial, which had been severed from that of Livsey, it was the testimony of Mrs. Dutter that the gun found by the roadside looked like the gun used by Livsey.

The single issue presented in this appeal is whether in an armed robbery case where it is clear that the weapon used was an unloaded revolver, was the trial court in error in instructing the jury that a person is considered armed with a dangerous weapon when he possesses a handgun.

More succinctly stated, it is the contention of the defendant that the trial court erred in removing from the province of the jury the question as to whether the revolver was or was not a dangerous weapon.

This issue is presented as the result of various actions on the part of the trial court and counsel during the trial of the defendant. The trial court instructed the jury that the State had to prove the following propositions beyond reasonable doubt:

> "That James Livsey took United States Currency from the person or presence of Janet Dutter; and
>
> That James Livsey did so by the use of force or by threatening the imminent use of force; and
>
> That James Livsey was armed with a dangerous weapon.
>
> That Robert Chapman, during the commission of the crime of armed robbery by James Livsey, with the intent to promote and facilitate the commission of the crime of armed robbery by James Livsey, aided the said James Livsey in the commission of the said offense of armed robbery."

The above instruction directed the jury to determine as one of the elements of the crime as to whether or not the State had proved beyond a reasonable doubt that the accomplice Livsey was armed with a dangerous weapon.

The trial court, in defining for the jury a dangerous weapon and apparently in reliance upon the definition of such term in the armed violence statute (Ill. Rev. Stat. 1975, ch. 38, par. 33A-1), instructed the jury that:

> "A person is considered armed with a dangerous weapon when he possesses a handgun."

The .38-caliber revolver being the weapon in question in the instant case was found unloaded by law enforcement officials shortly after the

commission of the crime. In final argument to the jury, the State made the following remarks:

> "I think if you look at the facts as has been testified to, *this gun was not loaded*. You can see why that makes sense. *They didn't have a loaded gun*. If Janet Dutter did try anything, they couldn't do anything other than stop them. They couldn't shoot them because the *gun wasn't loaded at this point*." (Emphasis added.)

From the foregoing itemization of the actions of the trial court and the prosecutor, it is clear that whether or not the unloaded .38-caliber revolver was a dangerous weapon was a matter deemed to be crucial in determining the guilt or innocence of the defendant.

Did the trial court err in instructing the jury that it must determine whether or not the gun in question was proven beyond reasonable doubt to be a dangerous weapon when subsequently the jury was instructed that a person is considered to be armed with a dangerous weapon when possessed of a handgun. Counsel for the defendant contends that error was committed, since such inconsistent instructions denied the defendant a fair trial in that they precluded the jury from determining a crucial issue as to whether or not the gun was a dangerous weapon. In support of this contention, appellate counsel for the defendant has made and presented to this court an exhaustive analyzation and interpretation of the Illinois case law pertaining to the question.

Fifty years ago our supreme court indicated by reasoning which we deem to be less than clear that a pistol, whether loaded or unloaded, is dangerous *per se*. (*People v. Dwyer* (1927), 324 Ill. 363, 155 N.E. 316.) Reviewing courts have relied on *Dwyer* even though *sub silentio* in affirming a number of armed robbery convictions without requiring either production of the firearm used or proof that it was loaded and operable at the time of the robbery. (See *People v. Patrick* (1972), 53 Ill. 2d 201, 290 N.E.2d 227; *People v. Mentola* (1971), 47 Ill. 2d 579, 268 N.E.2d 8; *People v. Emerling* (1930), 341 Ill. 424, 173 N.E. 474; and *People v. Moore* (1973), 14 Ill. App. 3d 361, 302 N.E.2d 425.) The dangerous-per-se rule promulgated in *Dwyer* has been seriously eroded if not erased by the many more recent decisions of our reviewing courts. Whether two .22-caliber starter pistols used in a robbery were dangerous weapons was held to be a question for the trier of fact. (See *People v. Trice* (1970), 127 Ill. App. 2d 310, 262 N.E.2d 276.) Whether a .22-caliber pistol designed to fire blank cartridges was a dangerous weapon was held to be an issue to be determined by a jury. (See *People v. Ratliff* (1974), 22 Ill. App. 3d 106, 317 N.E.2d 63.) In *People v. Richards* (1975), 28 Ill. App. 3d 505, 328 N.E.2d 692, it was held to be a question for the jury whether an inoperable sawed off rifle was a dangerous weapon. This court in

*People v. Hill* (1977), 47 Ill. App. 3d 976, 362 N.E.2d 470, held that the trier of fact was justified in holding that an unloaded air pistol was a dangerous weapon. It should be noted that in the cases of *Ratliff, Richard* and *Hill* the reviewing courts held that even if not dangerous by being used as a gun is intended to be used, to-wit, the firing of lethal bullets, the weapons were nevertheless dangerous since they could have been used to inflict physical harm, *i.e.*, as a bludgeon or club.

Other jurisdictions have found various guns to be dangerous weapons even though they could not have produced injury if used in the manner they were intended to be used, *viz., State v. Antes* (1976), 74 Wis. 2d 317, 246 N.W.2d 671 (pellet gun); *State v. Levi* (1971), 259 La. 591, 250 So. 2d 751 (an unworkable pistol); *Crum v. State* (1967), 1 Md. App. 132, 227 A.2d 766 (a .22-caliber gas pistol incapable of firing a bullet); and *Commonwealth v. Johnson* (1968), 212 Pa. Super. 1, 239 A.2d 861 (a toy gun having the appearance of a real weapon).

We have set forth a somewhat lengthy resume of the various weapons which have been held to be dangerous either per se or by jury determination. In light of the decisions where an air pistol, starter pistols, inoperable rifle, pellet gun, gas pistol, and toy gun have all been found to be dangerous weapons, we cannot agree that error was committed when in the instant case the trial court instructed the jury that a person is considered armed with a dangerous weapon when he possesses a handgun. The trial court may well have taken from the jury consideration of one of the elements of the offense of armed robbery; however, the cases we have cited clearly place a .38-caliber revolver, even though unloaded, in such category.

An examination of the decisions of the reviewing courts discloses that the courts will indulge in machinations in order to hold that almost any weapon is a dangerous one if it strikes fear into the heart of the victim. It may well be time to face realism and permit the trial court to determine as a matter of law what is a dangerous weapon. There is logic and reasoning to support such a determination on the part of the trial judge where firearms, operable or inoperable, are used to perpetrate an armed robbery. It is apparent that our supreme court attempted to define such as the law in the *Dwyer* case. (*People v. Dwyer* (1927), 324 Ill. 363, 155 N.E. 316.) A return to the rule in *Dwyer* would eliminate the machinations indulged in by our courts in order to reach the same result.

It is regrettable that the reviewing courts have adhered to an objective test in determining whether or not an accused was armed with a dangerous weapon. There is an adherence to the practice of determining the potentially harmful effects of the weapon whether used in the manner intended or in some other harmful manner. By applying the objective test

the courts have indulged in the far-from-satisfactory reasoning that an uncocked air pistol similar in appearance to a .45-caliber automatic pistol is a dangerous weapon because it could be used as a bludgeon.

A subjective test in determining what is a dangerous weapon would be a more realistic approach. "In making the determination the focus should be not so much upon the firearm or the pseudo firearm itself, but upon the intention with which the alleged firearm, or other weapon, was used by the perpetrator and the belief such use instilled, or reasonably could have been expected to instill, in the victim." See special concurring opinion of Mr. Justice Jones in *People v. Greer* (1977), 53 Ill. App. 3d 675, 686, 368 N.E.2d 996, 1004.

For the reasons set forth the conviction of the defendant and the sentence imposed thereon by the Circuit Court of Will County is affirmed.

Affirmed.

ALLOY and STENGEL, JJ., concur.