THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* FRANK MANZARDO *et al.*, Defendants-Appellants.

First District (5th Division)   Nos. 79-798, 79-799, 79-1525 cons.

Opinion filed August 1, 1980.

James J. Doherty, Public Defender, of Chicago (Mary T. Woodward and John E. Horn, Assistant Public Defenders, of counsel), for appellants.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Joel Eisen-Stein, and Ann L. Benedek, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE LORENZ delivered the opinion of the court:

Defendant Frank Manzardo was charged with aggravated assault of Betty Wojtas, unlawful use of weapons, failure to carry a firearm owner's identification card (Ill. Rev. Stat. 1977, ch. 38, pars. 12—2(a)(1), 24—1(a)(2), 83—2), and with failure to register a deadly weapon with the city of Chicago in violation of the Municipal Code of the City of Chicago. Defendant Irma Salazar was charged with battery of Lorna Sereiko. (Ill. Rev. Stat. 1977, ch. 38, par. 12—3(a).) Following a joint bench trial, Salazar was convicted of battery and Manzardo was convicted of unlawful use of weapons and aggravated assault but acquitted of the remaining charges. Both defendants were sentenced to 30 days in the House of Correction. On appeal, both defendants contend they were denied effective assistance of counsel at their trial. Manzardo also contends his conviction for unlawful use of weapons should be reversed because the complaint does not state an offense.

Shortly before midnight on April 29, 1978, Lorna Sereiko and her friend Shelly went to the Speedway Tavern in Chicago to meet Betty Wojtas and Lola Foyer. As she was leaving the tavern about five minutes later, somebody elbowed her. When she asked who had done this Manzardo told Salazar to "get" her. Salazar then threatened to beat the victim. Manzardo pushed her through the door and up against a building, where he pointed a gun at her and threatened to kill her. Both defendants beat her and dragged her down the alley where Salazar straddled her, beating her continuously about the face and pulling out patches of her hair. While Salazar beat her, Manzardo held the gun and threatened to kill anybody who tried to come into the gangway.

Betty Wojtas testified that when she tried to walk back into the

gangway, Manzardo pointed the gun in her face and said, "If you take another step, bitch, I will blow your head off." At this point she was scared and thought Manzardo was going to shoot her.

Chicago police officer Townsend testified that at approximately 12:30 a.m. on April 30, 1978, he responded to a call of a fight on the street. Upon entering the gangway, he observed the victim on the ground crying. After a conversation with her, he entered the Speedway Tavern and arrested defendants and advised them of their constitutional rights. He recovered a revolver from directly in front of Manzardo, who admitted that the gun was his.

Manzardo testified that he went in the Speedway Tavern around midnight on April 29, 1978, with Irma Salazar and recognized everybody in the tavern, including the victim and Betty Wojtas. He further testified that Wojtas, Sereiko and another woman named Lola attacked Salazar and called her names; that two weeks earlier Wojtas and another woman named Joanne Vicky had attacked Salazar. After all three women threatened to beat her up, Salazar "went after" Sereiko in the gangway and a fight ensued. When Sereiko said that she quit, Salazar let her up. He testified that the revolver was always in the tavern and was owned by a man named Comanzo. He denied telling Officer Townsend that he owned the revolver. However, he did admit that at the police station, when the officer asked him if he ever saw the gun, he had said, "Yes."

OPINION

Defendant Manzardo argues that this court should reverse his conviction for unlawful use of weapons because the complaint did not state an offense. Specifically, the complaint is allegedly defective for two reasons: (1) the cited statutory provision does not apply to firearms, and (2) the complaint fails to allege that a revolver was used, that it was loaded, or that it was a dangerous weapon.

The complaint charges Manzardo with unlawful use of weapons in violation of section 24—1(a)(2) of the Criminal Code in that he "knowingly carried, with intent to use unlawfully against another, a Smith & Wesson blue steel 6″ barrel bearing Serial #652650." Section 24—1(a)(2) provides that a person commits unlawful use of weapons when he knowingly:

> "(2) Carries or possesses with intent to use the same unlawfully against another, a dagger, dirk, billy, dangerous knife, razor, stiletto, broken bottle or other piece of glass, stun gun or laser or any other dangerous or deadly weapon or instrument of like character." Ill. Rev. Stat. 1977, ch. 38, par. 24—1(a)(2).

The first issue presented is whether the weapon Manzardo possessed, a revolver, was "any other dangerous or deadly weapon or instrument of

like character." Focusing on the phrase "of like character," defendant relies on *People v. King* (1978), 58 Ill. App. 3d 199, 373 N.E.2d 1045, which held a complaint was insufficient which alleged that a defendant knowingly carried and possessed with intent to use unlawfully against another a .22-caliber automatic rifle, a dangerous weapon. The appellate court for the Fourth District in *King* interpreted subsection (2) of the weapons offense section of the Criminal Code as not applying to firearms. The court distinguished *People v. Musselman* (1966), 69 Ill. App. 2d 454, 217 N.E.2d 420, and reasoned that a firearm was not "of like character" when compared to the weapons specifically enumerated in section 24—1(a)(2). Although the precise argument raised here and in *King* was not raised in *People v. Musselman*, it is clear that in that case a conviction under subsection (2) was sustained for unlawful use of a rifle. The court specifically commented that the rifle was "a dangerous or deadly weapon" in dealing with Musselman's argument that his criminal intent was not adequately proven. 69 Ill. App. 2d 454, 458.

We have determined to follow *People v. Musselman*. First, we consider that if section 24—1(a)(2) does not prohibit carrying or possessing a firearm with intent to use the firearm unlawfully against another, there is a hiatus in the statutory scheme for controlling the use of unlawful weapons which we do not think the legislature intended. A firearm is a dangerous weapon, and, even if unloaded or inoperable, it may be used as a bludgeon in the manner contemplated by 24—1(a)(2). (See *People v. Chapman* (1979), 73 Ill. App. 3d 546, 392 N.E.2d 391.) For example, under the aforesaid statute it would not seem unlawful to possess or carry an unloaded, unconcealed firearm in a municipality even with the specific intent to kill or do serious injury or to carry or possess a loaded firearm with similar intent outside a municipality. Therefore, we consider that, under *Musselman*, subsection (2) does apply to a firearm such as the revolver as it was used in this case.

Defendant's second challenge to the complaint for its failure to neither allege that a "a Smith & Wesson Blue Steel 6″ barrel bearing Serial #652650" is a revolver, nor that it was loaded, nor that it was a dangerous weapon is also without merit. Initially, we note that defendant did not raise the sufficiency of the complaint in the trial court. When attacked for the first time on appeal, a complaint is sufficient if it apprised the accused of the precise offense charged with sufficient specificity to prepare his defense and allow pleading a resulting conviction as a bar to future prosecution arising out of the same conduct. *People v. Pujoue* (1975), 61 Ill. 2d 335, 335 N.E.2d 437.

It is apparent from the record that defense counsel treated the complaint as charging a violation of section 24—1(a)(2). Throughout the trial, both the State and defense counsel made specific references to the

revolver which Manzardo carried and brandished on the night in question. When defense counsel cross-examined Officer Townsend, his questions specifically referred to the revolver which formed the basis of the complaint, but were concerned with where the revolver was recovered and whether it was inventoried. In short, there is no evidence in the record that defense counsel was confused about the nature of the weapon involved or the charge that had been filed against Manzardo. Whether the complaint failed to allege that the weapon was dangerous or that it was loaded is insignificant since we have already decided that a revolver, even if unloaded or inoperable, can be used as a bludgeon in violation of section 24—1(a)(2). Moreover, no issue was made at trial as to the condition of the revolver; defense counsel's inquiries were restricted to areas concerning the ownership and possession of the weapon. Therefore, the complaint and the record prove that defendant was sufficiently apprised of the charge against him to prepare his defense.

■■ Furthermore, the complaint was sufficient to plead in bar of future prosecution. It contained the date and place of the commission of the offense along with an accurate description of the weapon involved, only neglecting to list it as a "revolver." In addition, the record specifies the time and location of the offense, the parties involved and the weapon used. Therefore, we reject defendant's contention that the complaint did not state an offense.

Both defendants claim they were denied adequate assistance of their retained counsel. A court will not reverse a conviction because of the claimed incompetency of privately retained counsel unless the representation is of such low caliber as to amount to no representation at all or reduces the court proceedings to a farce or sham. (*People v. Murphy* (1978), 72 Ill. 2d 421, 436, 381 N.E.2d 677.) We find defendants' examples of incompetency to be unpersuasive.

■■ Defendant Salazar claims counsel presented virtually no defense for her at all, but she does not set forth what defense could have been presented when the victim and another eyewitness testified to Salazar's actions in severely beating and actually pulling out large patches of the victim's hair. The hair itself, together with photographic exhibits of the victim, were admitted into evidence. In closing argument, with respect to Salazar, counsel did not argue that the altercation did not take place, but that it was provoked. We do not find that this amounts to an admission by counsel of Salazar's guilt.

Since we have concluded that the weapons charge states an offense, counsel's failure to object to the charge against Manzardo cannot constitute incompetence. However, Manzardo also claims counsel did not properly oppose admission of his statement to the police officer. The record shows that, when defense counsel objected to admission of

134

conversations between defendant and police, evidence was presented which established that defendant was properly advised of his rights under *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, waived those rights and made an admission. In sum, defense counsel's competency depends upon the facts and circumstances of each case viewed in their totality from the entire record, rather than a focus upon isolated incidents occurring during the course of the trial. (*People v. Mahon* (1979), 77 Ill. App. 3d 413, 395 N.E.2d 950.) Defendants' other references to single events before and during trial in an effort to show ineffective assistance of their counsel do not convince us that the representation reduced the court proceedings to a farce or sham. (*Murphy.*) Instead, the record shows that defense counsel made numerous objections during the direct examination of the State's witnesses which were sustained by the trial court, skillfully cross-examined those witnesses, and elicited testimony from Manzardo in support of defendant's theory of defense. We, therefore, conclude that defense counsel's representation of defendants was vigorous and competent. Defendants were not denied the effective assistance of counsel.

The judgments of the circuit court are therefore affirmed.

Affirmed.

SULLIVAN, P. J., and MEJDA, J., concur.