(No. 59957

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. TOMMY RUTLEDGE, Appellee.

*Opinion filed November 30, 1984.*

Neil F. Hartigan, Attorney General, of Springfield (Mark L. Rotert and Terence M. Madsen, Assistant At-

torneys General, of Chicago, and John M. Wood, of the State's Attorney's Appellate Service Commission, of Ottawa, of counsel), for the People.

James Patrick Murphy, of Flack, Kwacala & Murphy, of Macomb, for appellee.

JUSTICE GOLDENHERSH delivered the opinion of the court:

In a bench trial in the circuit court of McDonough County, defendant, Tommy Rutledge, was convicted of possession of a deadly weapon with intent to use it unlawfully (Ill. Rev. Stat. 1981, ch. 38, par. 24—1(a)(2)). The appellate court reversed (122 Ill. App. 3d 50), and we allowed the People's petition for leave to appeal. The facts are adequately stated in the appellate court opinion and will not be repeated here. Relevant to the issue presented in this appeal, there was testimony that, during an altercation on the parking lot of a 7-Eleven store, defendant was in possession of a gun.

In pertinent part section 24—1(a)(2) provided:

"(a) A person commits the offense of unlawful use of weapons when he knowingly:

    ***

    (2) Carries or possesses with intent to use the same unlawfully against another, a dagger, dirk, billy, dangerous knife, razor, stiletto, broken bottle or other piece of glass, stun gun or taser or any other dangerous or deadly weapon or instrument of like character; ***." Ill. Rev. Stat. 1981, ch. 38, par. 24—1(a)(2).

The appellate court reversed, stating: "Because we find that subsection (a)(2) does not include firearms, and we find no evidence in the record that defendant was carrying any of the dangerous or deadly weapons described in subsection (a)(2), we find the evidence insufficient to sustain a conviction under subsection (a)(2) ***."

122 Ill. App. 3d 50, 52.

The People contend that "principles of statutory construction dictate that 'any other dangerous or deadly weapon' includes firearms." They argue that a pistol is *per se* a deadly weapon and that the appellate court's interpretation of the statute "fails to give full effect to the intended built-in flexibility of section (a)(2)." They contend that the plain meaning of the subsection supports the interpretation that firearms are included within the scope of subsection (a)(2). They argue that this subsection prohibits possession of a weapon on private property where there is an intent to use it unlawfully; that because no other section of the statute applies on its face to possession on private property, the appellate court's construction of the statute would create a situation "where it would be unlawful use of a weapon to simply possess a pistol on a public way or public lands but would not be unlawful to possess such a weapon on private property with the formed intent to use it unlawfully against another."

An earlier version of section 24—1, section 1 of "An Act revising the law relating to deadly weapons" (Ill. Rev. Stat. 1927 (Smith-Hurd), ch. 38, par. 152), provided:

> "It shall be unlawful for any person to carry or possess or sell, loan or give to any person, any blackjack, slung-shot, sand-club, sand-bag, metal knuckles, bludgeon, or to carry or possess, with intent to use the same unlawfully against another, a dagger, dirk, billy, dangerous knife, razor, stiletto or any other dangerous or deadly weapon or instrument of like character."

In *People v. Sheldon* (1926), 322 Ill. 70, an information charged the defendant with having a revolver in his possession. In holding that the information failed to charge an offense under the statute, the court said:

> "From an inspection of the informations it is evident

that they were attempted to be drawn under section 1 of the act of 1925, but neither pistols, revolvers nor any other fire-arms are mentioned in that section, and while section 1 does make it unlawful for any person 'to carry or possess, with intent to use the same unlawfully against another, a dagger, dirk, billy, dangerous knife, razor, stiletto, or any other dangerous or deadly weapon or instrument of like character,' the words 'other dangerous or deadly weapon or instrument of like character,' under the doctrine of *ejusdem generis* could not be held to apply to pistols, revolvers or other fire-arms. It is a well settled rule of construction that where general words follow particular and specific words in a statute the general words must be construed to include only things of the same kind as those indicated by the particular and specific words. (*Shirk v. People,* 121 Ill. 61; *Ambler v. Whipple,* 139 id. 311; *Cecil v. Green,* 161 id. 265; *Gundling v. City of Chicago,* 176 id. 340; *People v. Melville,* 265 id. 176.) Neither is there any allegation in the information that the defendants carried or possessed the revolvers with intent to use the same unlawfully against another, which is a substantial requirement of that part of section 1." 322 Ill. 70, 73.

Section 1 continued in substantially the same form until the adoption of the Criminal Code of 1961 (Ill. Rev. Stat. 1961, ch. 38, par. 1—1 *et seq.*). In the enactment of the Criminal Code of 1961, section 24—1(a)(2) was adopted in substantially its present form, except that no mention was made of any "broken bottle or other piece of glass, stun gun or taser." The language "broken bottle or other piece of glass" was added by House Bill 723, approved August 11, 1967. (1967 Ill. Laws 2815, 2816.) Public Act 80—259, enacted June 28, 1977, and approved August 19, 1977, added the language "stun gun or taser" and also added to section 24—1(a)(10) the following definition:

"A 'stun gun or taser', as used in this paragraph (a) means any device which is powered by electrical charging units, such as, batteries, and which, fires one or several

barbs attached to a length of wire and which, upon hitting a human can send out current capable of disrupting the person's nervous system in such a manner as to render him incapable of normal functioning."

Although this court has not had occasion since *People v. Sheldon* to consider the issue here presented, the appellate court has done so in three cases. In *People v. Musselman* (1966), 69 Ill. App. 2d 454, a conviction involving a rifle was affirmed under section 24—1(a)(2). An examination of the opinion, however, shows that the question was neither considered nor discussed by the court. In *People v. King* (1978), 58 Ill. App. 3d 199, the appellate court concluded that the phrase "any other dangerous or deadly weapon" contained in the statute did not include firearms. In *People v. Manzardo* (1980), 87 Ill. App. 3d 129, the appellate court held that a revolver was a dangerous weapon within the contemplation of the statute. In none of the three opinions cited does the appellate court appear to have considered *People v. Sheldon.*

In *People ex rel. Schlaeger v. Reilly Tar & Chemical Corp.* (1945), 389 Ill. 434, the court said:

"Where a statute is re-enacted in substantially the same language as a former statute which has been judicially considered, the presumption obtains that the General Assembly re-enacted the statute in view of such construction." (389 Ill. 434, 446.)

Applying this presumption to the statute under consideration, it would appear that the General Assembly did not intend in its various reenactments that firearms be included in the term "or any other dangerous or deadly weapon or instrument of like character." Article 24 of the Criminal Code contains other provisions applicable to firearms, and there are other sections of the Criminal Code which are applicable to the facts of this case.

For the reasons stated, we hold that the appellate

court correctly construed the statute, and the judgment is affirmed.

*Judgment affirmed.*