THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOSHUA T. DAVIS, Defendant-Appellant.

Third District   No. 3—99—0309

Opinion filed February 8, 2001.

HOMER, P.J., specially concurring in part and dissenting in part.

Thomas A. Karalis (argued), of State Appellate Defender's Office, of Ottawa, for appellant.

Ted J. Hamer, State's Attorney, of Cambridge (John X. Breslin and Richard T. Leonard (argued), both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE HOLDRIDGE delivered the opinion of the court:

Defendant Joshua T. Davis was charged by indictment with one count each of armed violence, aggravated battery (great bodily harm), and battery, and two counts each of aggravated battery with a firearm. The charges of aggravated battery with a firearm were dismissed prior to trial. Following a stipulated bench trial, the defendant was convicted of all remaining charges. He was sentenced to a six-year term of imprisonment on the armed violence conviction and a concurrent jail sentence of 364 days on the simple battery conviction. The defendant was also ordered to pay restitution to his two victims in the amount of approximately $28,000. The conviction of aggravated battery (great bodily harm) was vacated as a lesser-included offense of the armed violence conviction.

The single issue raised on appeal is whether the defendant committed the offense of armed violence when he shot out one of his victim's eyes with a Crossman .177 caliber air-powered pellet/bb pistol. For the following reasons, we affirm the conviction.

The undisputed evidence established that on July 2, 1998, several boys were at the home of the defendant visiting his brother. The boys were on the roof of the house setting off fireworks when the defendant peered out of a window and announced that he would shoot the boys if they did not come down from the roof. Shortly thereafter, the defendant reappeared holding the Crossman pistol. The defendant took aim at one of the boys (Matthew Mulder) and told him to leave the property or be shot. Mulder felt a shot whizz past his head. He turned to run to his bicycle when he felt a sting in his back. Mulder then heard his friend Cody Junior scream that he had been shot. Junior was hit with a bb/pellet in the left eye.

Mulder was subsequently treated for a minor wound and released from the local emergency room. Junior eventually had to have his left eye removed.

Police Chief Carl Koehler went to the Davis house and was given the bb/pellet pistol by the defendant's mother. Defendant was interviewed, waived his *Miranda* rights and admitted that he had fired the gun at Mulder and Junior because they had irritated him.

After the stipulated evidence was presented, the trial court found the defendant guilty of armed violence, aggravated battery and battery. The trial court sentenced the defendant to the statutory minimum sentence for armed violence—six years.

On appeal, the defendant maintains that the Crossman bb/pellet air pistol is not a "dangerous weapon" as that term is defined in the armed violence statute (720 ILCS 5/33A—1 (West 1992)), and therefore he cannot be guilty of that particular offense. Both parties acknowledge that whether a bb/pellet air pistol is a dangerous weapon under the Illinois armed violence statute is a question of first impression.

■ ■ The issue herein involves the statutory construction of the armed violence statute. Because the construction of a statute is a question of law, the standard of review is *de novo*. *People v. Robinson*, 172 Ill. 2d 452 (1996). The primary rule of statutory construction is to ascertain and give effect to the intent of the legislature. *People v. Whitney*, 188 Ill. 2d 91 (1999). When statutory language is clear and not ambiguous, its plain meaning will be given effect. *Whitney*, 188 Ill. 2d at 97. When the meaning of the enactment is unclear from the statutory language itself, the court may look beyond the language employed and consider the purpose behind the law and the evils the law was designed to remedy. *Kunkel v. Walton*, 179 Ill. 2d 519 (1997).

■ A person is guilty of the offense of armed violence if he commits a felony while armed with a dangerous weapon. The definition of "armed with a dangerous weapon" at issue in this proceeding is contained in section 33A—1 of the Criminal Code of 1961 (the Code), with the relevant part reading:

"(a) 'Armed with a dangerous weapon'. A person is considered armed with a dangerous weapon for purposes of this Article, when he or she carries on or about his or her person or is otherwise armed with a category I or category II weapon. (b) A category I weapon is a pistol, revolver, rifle, shotgun, spring gun, or *any other firearm*, sawed-off shotgun, a stun gun or taser as defined in paragraph (a) of Section 24—1 of this Code, knife with a blade of at least 3 inches in length, dagger, dirk, switchblade knife, stiletto, *or any other deadly or dangerous weapon or instrument of like character*. (c) A category II weapon is a bludgeon, blackjack, slungshot, sand-bag, sand-club, metal knuckles, billy or other dangerous weapon of like character." (Emphasis added.) 720 ILCS 5/33A—1 (West 1992).

■ A weapon specifically listed in the definition is considered a *per se* dangerous weapon. Mere possession of such a weapon during commission of a felony is sufficient to sustain a conviction for armed violence. *People v. Alejos*, 97 Ill. 2d 502 (1983). However, a weapon not listed can become a dangerous weapon when it is used in a manner dangerous to the well-being of the individual threatened. *People v. Ptak*, 193 Ill. App. 3d 782 (1990) (defendant stabbing victim with broken glass bottle guilty of armed violence).

■ In the instant matter, the defendant argues that the bb/pellet air pistol that he fired at Mulder and Junior did not fall within the category I definition of a dangerous weapon. We disagree and find that the weapon at issue is a category I weapon. The statute lists several category I weapons, including pistol, spring gun and firearm, and then concludes with the general statement "any other deadly or dangerous weapon or instrument of like character." 720 ILCS 5/33A—1 (West 1992). The question thus presented to us is whether an air pistol capable of firing steel or lead bbs or pellets at a muzzle velocity of 435 feet per second is a dangerous "instrument of like character" to a pistol, spring gun or firearm.

We find that the air pistol at issue is such a dangerous instrument intended to be covered by the category I definition under the Code. Although there are differences between the air pistol and the weapons specifically listed in the Code, the air pistol shares some important characteristics with some of the weapons listed in the statute, such as size, use, and ability to aim and expel a projectile with sufficient force and accuracy to do bodily harm. We find, therefore, that the air pistol at issue is a category I weapon.

The defendant suggests the doctrine of *ejusdem generis* should prevent us from reading the general language of the statute to encompass the air pistol at issue. The doctrine of *ejusdem generis*

states that general language which immediately follows particular and specific words in a statute is presumed to include only things of the same kind as the particular and specific. The defendant would have the general statement "any other deadly or dangerous weapon or instrument of like character" apply only to items which are similar to "a knife with a blade of a least 3 inches in length, dagger, dirk, switchblade knife, [or] stiletto." 720 ILCS 5/33A—1 (West 1992). We cannot agree. Although the statute at issue is not a model of clarity, a plain reading of the statute indicates that the general language "any other deadly or dangerous weapon or instrument of like character" was not intended to be limited to stilettos, or knife-like weapons, but was rather intended to include all weapons listed in the statute. 720 ILCS 5/33A—1 (West 1992). The defendant has given no explanation as to why the legislature would limit the general phrase just to knife-like weapons, and we can think of none.

For the foregoing reasons, we find that an air-powered bb/pellet pistol is a dangerous weapon under the armed violence statute. We therefore affirm the judgment of the circuit court of Henry County.

Affirmed.

SLATER, J., concurs.

PRESIDING JUSTICE HOMER, specially concurring in part and dissenting in part:

I agree that the defendant was properly convicted of armed violence in this case. However, I believe that the trial court erred in sentencing the defendant as a Class X offender. In my opinion, the defendant's crime constituted a Class 2 felony.

The defendant was convicted of count I of the indictment, which charged the defendant with armed violence in that "while armed with a dangerous weapon, a Crossman .357 .177 caliber pellet gun *** [the defendant] shot [the victim] in the eye, thereby causing great bodily harm to the [victim]" in violation of section 33A—2 of the Criminal Code of 1961 (the Code) (720 ILCS 5/33A—2 (West 1992)). At the time of the instant offense, the operative statute provided as follows:

> "(a) 'Armed with a dangerous weapon'. A person is considered armed with a dangerous weapon for the purposes of this Article, when he carries on or about his person or is otherwise armed with a category I or category II weapon. (b) A category I weapon is a pistol, revolver, rifle, shotgun, spring gun, *or any other firearm, sawed-off shotgun, a stun gun or taser as defined in paragraph (a) of Section 24—1 of this Code,* knife with a blade of at least 3 inches

in length, dagger, dirk, switchblade knife, stiletto, *or any other deadly or dangerous weapon or instrument of like character.* (c) A category II weapon is a bludgeon, blackjack, slungshot, sand-bag, sand-club, metal knuckles, billy or other dangerous weapon of like character." (Emphasis added.) 720 ILCS 5/33A—1 (West 1992).

Under rules of statutory construction, we should hold that the subject air pistol constituted a category II weapon rather than the category I weapon that the majority found. As argued by the defendant, the doctrine of *ejusdem generis* is applicable here. This well-settled rule of statutory construction provides that where general words follow particular and specific words in a statute, the general words must be construed to include only things of the same kind as those indicated by the particular and specific words. *People v. Rutledge*, 104 Ill. 2d 394, 472 N.E.2d 438 (1984).

In the case *sub judice*, the majority holds that the general language "any other deadly or dangerous weapon or instrument of like character" which appears at the end of subsection (b) (720 ILCS 5/33A—1(b) (West 1992)) applies to the entire subsection. Opining that an air pistol is an "instrument of like character" to the firearm-type weapons listed in the initial part of subsection (b), the majority concludes that an air pistol is a category I weapon. I believe this interpretation is incorrect. Under the doctrine of *ejusdem generis*, the general language that appears at the end of subsection (b) should be construed to apply only to the specific blade-type weapons that immediately precede the language, *i.e.*, a "knife with a blade of at least 3 inches in length, dagger, dirk, switchblade knife, stiletto." 720 ILCS 5/33A—1(b) (West 1992). It cannot reasonably be said that an air pistol is an instrument of like character to such weapons. Because an air pistol is neither a firearm nor a blade-type weapon, I do not believe it is included in subsection (b). Accordingly, it is not a category I weapon.

In its alternative argument, the State correctly notes that the instant air pistol can be considered a category II weapon because it is a dangerous instrument like a "slungshot" (more commonly called a "slingshot"). Both can be used as weapons and both propel projectiles at dangerous velocities, threatening serious bodily injury. I believe this is the correct analysis.

Accordingly, I would hold that the air pistol used by the defendant in this case constituted a category II weapon. At the time of this offense, armed violence with a category II weapon was a Class 2 felony. 720 ILCS 5/33A—3(b) (West 1992). Because the defendant was sentenced for a Class X felony, I would remand the cause for resentencing.