# Illinois Official Reports

## Supreme Court

---

### *People v. Ligon*, 2016 IL 118023

---

| | |
|---|---|
| Caption in Supreme Court: | THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. DENNIS LIGON, Appellee. |
| Docket No. | 118023 |
| Filed | February 19, 2016 |
| Decision Under Review | Appeal from the Appellate Court for the First District; heard in that court on appeal from the Circuit Court of Cook County; the Hon. James Michael Obbish, Judge, presiding. |
| Judgment | Appellate court judgment reversed. Circuit court judgment affirmed. |
| Counsel on Appeal | Lisa Madigan, Attorney General, of Chicago, and Anita Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Kathryn A. Schierl, Michelle Katz and Annette Collins, Assistant State's Attorneys, of counsel), for the People. |
| | Michael J. Pelletier, State Appellate Defender, Alan D. Goldberg, Deputy Defender, and Patrick F. Cassidy, Assistant Appellate Defender, of the Office of the State Appellate Defender, of Chicago, for appellee. |
| Justices | JUSTICE KARMEIER delivered the judgment of the court, with opinion. Chief Justice Garman and Justices Freeman, Thomas, Kilbride, Burke, and Theis concurred in the judgment and opinion. |

**OPINION**

¶ 1        A Cook County jury found defendant, Dennis Ligon, guilty of aggravated vehicular hijacking with a dangerous weapon other than a firearm (AVH/DW), a Class X felony, under section 18-4(a)(3), (b) of the Criminal Code of 1961 (Code) (720 ILCS 5/18-4(a)(3), (b) (West 2000)). Determining that this was defendant's third Class X felony conviction, the trial court adjudged him an habitual criminal and sentenced him to a term of mandatory life imprisonment under section 33B-1(a), (e) of the Code (720 ILCS 5/33B-1(a), (e) (West 2000)). Defendant subsequently filed a petition for relief from judgment under section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2012)), contending that this sentence violated the proportionate penalties clause of the Illinois Constitution of 1970 (Ill. Const. 1970, art. I, § 11). The trial court dismissed defendant's petition *sua sponte*, and he appealed. The appellate court reversed the trial court's judgment, vacated defendant's sentence for AVH/DW and remanded for resentencing in accordance with its opinion. 2014 IL App (1st) 120913, ¶ 15. The State petitioned this court for leave to appeal as a matter of right under Illinois Supreme Court Rule 317 (eff. July 1, 2006) or, alternatively, as a matter of discretion under Rule 315 (Ill. S. Ct. R. 315(a) (eff. Feb. 26, 2010)). We granted the State leave to appeal, and, for the reasons that follow, we reverse the judgment of the appellate court and affirm the judgment of the circuit court.

¶ 2                                        BACKGROUND

¶ 3        On December 16, 2000, defendant, while armed with a BB gun, approached Ana Diaz as she was getting out of her pickup truck and took that vehicle from her. Following defendant's arrest, he was charged by indictment with AVH/DW, in that "he, knowingly took a motor vehicle, a 2000 Ford, from the person or immediate presence of [Ana] Diaz, by the use of force or by threatening the imminent use of force and [defendant] was armed with a dangerous weapon, to wit: a bludgeon," in violation of section18-4(a)(3). At his April 2003 trial, the State presented, *inter alia*, the testimony of Diaz, who identified defendant as her attacker and described the crime. According to Diaz, defendant approached her after she had parked her red Ford F150 pickup truck and told her to leave her keys in the ignition and get out of the truck. Diaz gave defendant her keys after he pushed "a gun" into her side and threatened to kill her. When Diaz moved away from the truck, defendant drove off. Diaz identified People's Exhibit 2 as "the gun that [defendant] pulled on me."

¶ 4        The State also presented the testimony of Officer Eric Helson, who stated that early on the morning of January 3, 2001, he and his partner were on duty when they noticed another patrol car stopped near a red Ford truck. After Helson spoke with the officer who had arrived on the scene first, the truck's occupants, Georgio Dawson and Tenita Barber, were questioned and asked to step out of the truck. Dawson and Barber stated that a man named Dennis had been driving the truck but had recently gotten out and walked away. A search by police of the truck revealed a "black hand BB gun" on the floor of the driver's side. Officer Helson thereafter learned that the truck was stolen. Helson and his partner then took Dawson to locate the driver, and Dawson soon pointed out defendant, standing near the entrance to an elevated train station about a block and a half from the red truck. Defendant identified himself to Helson as Dennis and was arrested. Officer Helson identified People's Exhibit 2 as the BB gun found in the

- 2 -

truck. The parties stipulated that Diaz was the owner of the stolen truck in which Dawson and Barber were seated. The jury found defendant guilty of AVH/DW.

¶ 5 On June 11, 2003, the State petitioned the court to have defendant adjudged and sentenced under the Habitual Criminal Act (Act), based upon the fact that this was his third conviction for a Class X offense. See 720 ILCS 5/33B-1(a), (e) (West 2000). Defendant filed a *pro se* motion for new trial and his trial counsel also filed a motion for new trial. When trial counsel was replaced by private counsel, a supplemental motion was filed incorporating both previous motions. That motion alleged that a new trial was warranted because, *inter alia*, defendant was not proven guilty beyond a reasonable doubt, and because no evidence was presented at trial that the BB gun was used as a bludgeon, as was averred in defendant's indictment. Following an evidentiary hearing, the trial court denied the supplemental motion for a new trial. The court, at sentencing, found the requirements of the Act had been met and imposed the mandatory term of natural life in prison. See 720 ILCS 5/33B-1(a), (e) (West 2000).

¶ 6 On direct appeal, the appellate court affirmed defendant's conviction and sentence, rejecting, *inter alia*, his claim that the State failed to prove AVH/DW beyond a reasonable doubt because it did not prove that he committed the offense with a dangerous weapon other than a firearm. *People v. Ligon*, 365 Ill. App. 3d 109 (2006). Defendant's subsequent petition for leave to appeal was denied by this court (*People v. Ligon*, 221 Ill. 2d 658 (2006) (table)), as was his petition for a writ of *habeas corpus* (*Ligon v. Jones*, No. 06 C 5862, 2007 WL 2351228 (N.D. Ill. Aug. 14, 2007)). In March 2007, defendant filed a *pro se* postconviction petition which was summarily dismissed by the trial court. Defendant again appealed, without success. *People v. Ligon*, 392 Ill. App. 3d 988 (2009), *aff'd*, 239 Ill. 2d 94 (2010), *cert. denied*, 562 U.S. 1296 (2011).

¶ 7 Thereafter, in January 2012, defendant filed the section 2-1401 petition at issue in this appeal maintaining, for the first time, that his sentence was void as a violation of the proportionate penalties clause of the Illinois Constitution. Ill. Const. 1970, art. I, § 11. The trial court dismissed the petition, finding that defendant had forfeited his constitutional challenge by failing to raise it in his direct appeal or postconviction petitions, and that, regardless of forfeiture, his legal arguments were not the proper subject of a petition for relief from judgment under section 2-1401. On appeal, the appellate court reversed the trial court, agreeing with defendant's claim that the Class X offense of aggravated vehicular hijacking has identical elements as the Class 1 offense of armed violence predicated on vehicular hijacking with a dangerous weapon, and thus his sentence for AVH/DW violated the proportionate penalties clause because it was punished more severely than the described offense of armed violence. 2014 IL App (1st) 120913, ¶¶ 5-6, 11; 720 ILCS 5/18-4(b), 33A-3(b) (West 2000). The appellate court therefore vacated defendant's sentence for AVH/DW and remanded for resentencing as a Class 1 offender under the armed violence statute. 2014 IL App (1st) 120913, ¶ 15.

¶ 8                                                          ANALYSIS

¶ 9 Initially, we note our agreement with the appellate court below that the trial court erred in dismissing defendant's section 2-1401 petition due to forfeiture and because it was improperly raised. 2014 IL App (1st) 120913, ¶ 7. Voidness challenges stemming from the unconstitutionality of a criminal statute under the proportionate penalties clause may be raised

at any time. *People v. Guevara*, 216 Ill. 2d 533, 542 (2005). Further, a motion to vacate a void judgment is properly raised in a petition for relief from judgment under section 2-1401. *Sarkissian v. Chicago Board of Education*, 201 Ill. 2d 95, 104-05 (2002); see also *People v. Thompson*, 2015 IL 118151, ¶¶ 31-32 (a type of voidness challenge to a final judgment under section 2-1401 involves a challenge based on a facially unconstitutional statute). Thus, the trial court should have reached the merits of defendant's petition. 2014 IL App (1st) 120913, ¶ 7.

¶ 10    Before this court, the State argues that the appellate court erred in finding a violation of the proportionate penalties clause of our constitution. Article I, section 11, of the Illinois Constitution provides that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. "In analyzing a proportionate penalties challenge, our ultimate inquiry is whether the legislature has set the sentence in accord with the seriousness of the offense." *Guevara*, 216 Ill. 2d at 543; see also *People v. Lombardi*, 184 Ill. 2d 462, 473-74 (1998). In *Guevara*, 216 Ill. 2d at 543-44, we recognized that there are several ways in which a penalty can violate the proportionate penalties clause: (1) if it is so cruel, degrading, or disproportionate to the offense that the sentence shocks the moral sense of the community; or (2) if it is greater than the sentence for an offense with identical elements.

¶ 11    In cases such as this one, where defendant argues solely that the second, or "identical elements," test is at issue, this court has repeatedly observed that, " '[i]f the legislature determines that the exact same elements merit two different penalties, then one of these penalties has not been set in accordance with the seriousness of the offense.' " *People v. Clemons*, 2012 IL 107821, ¶ 30 (quoting *People v. Sharpe*, 216 Ill. 2d 481, 522 (2005)). An expectation of identical penalties for identical offenses comports with "common sense and sound logic" (*People v. Christy*, 139 Ill. 2d 172, 181 (1990)) and also gives effect to the plain language of the Illinois Constitution (*Clemons*, 2012 IL 107821, ¶ 30). Thus, where identical offenses do not yield identical penalties, this court has held that the penalties were unconstitutionally disproportionate and the greater penalty could not stand. *Sharpe*, 216 Ill. 2d at 504 (citing *Christy*, 139 Ill. 2d at 181). As the constitutionality of a statute is purely a matter of law, we review the question *de novo. People v. Hauschild*, 226 Ill. 2d 63, 83 (2007); *Sharpe*, 216 Ill. 2d at 486-87. However, we begin with the presumption that the statute is constitutional and that, if reasonably possible, this court must construe the statute so as to affirm its constitutionality and validity. *In re D.W.*, 214 Ill. 2d 289, 310 (2005).

¶ 12    Given these principles, we first examine the State's contention that it is not appropriate to conduct an identical elements comparison between the offenses of AVH/DW and armed violence predicated on vehicular hijacking with a category III dangerous weapon, because "defendant was not sentenced under the aggravated vehicular hijacking statute, but rather the [Act]." While we agree that the identical elements test is not applicable to the Act, we reject the State's argument, which it based on the holding in *People v. Cummings*, 375 Ill. App. 3d 513, 521-22 (2007), that an identical elements challenge may not be conducted where the defendant is ultimately adjudged an habitual criminal and sentenced under the Act.

¶ 13    Section 33B-1(a) states:

"Every person who has been twice convicted in any state or federal court of an offense that contains the same elements as an offense now classified in Illinois as a Class X felony, criminal sexual assault, aggravated kidnapping or first degree murder, and is

thereafter convicted of a Class X felony, criminal sexual assault or first degree murder, committed after the 2 prior convictions, shall be adjudged an habitual criminal." 720 ILCS 5/33B-1(a) (West 2000).

"The Habitual Criminal Act mandates the imposition of a natural life sentence on a defendant convicted of three Class X felonies within a 20-year period." *People v. Levin*, 157 Ill. 2d 138, 148 (1993); 720 ILCS 5/33B-1(a), (e) (West 2000); see also *People v. Dunigan*, 165 Ill. 2d 235, 243 (1995) (under the Act, the defendant received a mandatory sentence of life imprisonment as punishment for his third serious felony offense).

¶ 14    Section 33B-2 of the Act sets out the procedures that apply when the State seeks to have a court sentence a defendant as an habitual criminal. Section 33B-2(a) provides, in pertinent part:

> "After a plea or verdict or finding of guilty and before sentence is imposed, the prosecutor may file with the court a verified written statement signed by the State's Attorney concerning any former conviction of an offense set forth in Section 33B–1 rendered against the defendant. The court shall then cause the defendant to be brought before it; shall inform him of the allegations of the statement so filed, and of his right to a hearing before the court on the issue of such former conviction and of his right to counsel at such hearing; and unless the defendant admits such conviction, the court shall hear and determine such issue, and shall make a written finding thereon." 720 ILCS 5/33B-2(a) (West 2000).

Accordingly, after the State presents evidence that a defendant has been convicted of three qualifying Class X offenses, he "shall be adjudged an habitual criminal." 720 ILCS 5/33B-1(a) (West 2000). In other words, the court shall "[a]djudge" or make a "judicial determination" of the requisite facts and, based thereon, "decree," "sentence," or enter judgment on defendant under the Act. See Black's Law Dictionary 39 (5th ed. 1979) (defining "[a]djudge").

¶ 15    Further, the United States Supreme Court and this court have repeatedly acknowledged that habitual criminal statutes do not define a new or independent criminal offense. *Dunigan*, 165 Ill. 2d at 242 (citing *Gryger v. Burke*, 334 U.S. 728 (1948), and *People v. Williams*, 36 Ill. 2d 505 (1967)). As this court stated in *Dunigan*:

> "Rather, such statutes simply prescribe the circumstances under which a defendant found guilty of a specific crime may be more severely punished because that defendant has a history of prior convictions. The punishment imposed under the Act is for the most recent offense only. The penalty is made heavier because the person convicted is a habitual criminal. The Act does not punish a defendant again for his prior felony convictions, nor are those convictions elements of the most recent felony offense. Instead, they simply aggravate or enhance the penalty imposed for the third and most recent offense." *Dunigan*, 165 Ill. 2d at 242.

This court has similarly stated that "habitual-offender legislation neither creates a separate offense nor directly involves the prior crimes. The prior-conviction evidence *** is merely a matter of aggravation going solely to the punishment to be imposed; it is not an ingredient of the main offense charged." *Levin*, 157 Ill. 2d at 149 (citing *People v. Kirkrand*, 397 Ill. 588, 590 (1947)).

¶ 16    Therefore, where the Act is a solely recidivist sentencing statute that does not define any crime and thus has no elements to compare with another statute, it has no application to the

identical elements test, which requires the court to compare the elements of each offense as set forth in the statute defining it. See, *e.g.*, *People v. Hauschild*, 226 Ill. 2d 63, 85-86 (2007) (under the identical elements test, court compared statutory elements of armed robbery while armed with a firearm to the statutory elements of armed violence predicated on robbery while armed with a category I weapon); *People v. Graves*, 207 Ill. 2d 478, 483-84 (2003) (under identical elements test, court compared statutory elements of unauthorized theft to statutory elements of theft by deception). Additionally, because the Act only comes into play *following* a defendant's conviction of a third Class X felony, its sentencing provisions cannot be compared to the sentences for any of the particular Class X felonies that can trigger it. See *Dunigan*, 165 Ill. 2d at 242.

¶ 17    Thus, we conclude that the State's reliance on the appellate court's decision in *Cummings* was mistaken where that court erred in rejecting an identical elements comparison of the offenses of armed violence and armed robbery, instead finding the "defendant was not sentenced for his armed robbery conviction" but was adjudged an habitual criminal and sentenced to life imprisonment. *Cummings*, 375 Ill. App. 3d at 521-22. Accordingly, *Cummings* is hereby overruled. See 2014 IL App (1st) 120913, ¶¶ 13-14 (questioning the vitality of *Cummings* in light of this court's "ongoing reaffirmation of the identical elements test").

¶ 18    Having established that a defendant's eventual adjudication and sentence as an habitual criminal has no effect on a court's determination of whether a qualifying offense violates the proportionate penalties clause under the identical elements test, we proceed to examine the State's contention that AVH/DW, as charged herein under section 18-4(a)(3) of the Code (720 ILCS 5/18-4(a)(3) (West 2004)), and armed violence while armed with a category III weapon (720 ILCS 5/33A-2(a), 33A-1(c)(3) (West 2004)), do not have identical elements. The AVH/DW statute in effect at the time of defendant's offense states, in pertinent part:

> "(a) A person commits aggravated vehicular hijacking when he or she violates Section 18–3[1]; and
>
> * * *
>
> (3) he or she carries on or about his or her person, or is otherwise armed with a dangerous weapon, other than a firearm; ***
>
> * * *
>
> (b) Sentence. *** Aggravated vehicular hijacking in violation of subsection (a)(3) is a Class X felony for which a term of imprisonment of not less than 7 years shall be imposed." 720 ILCS 5/18-4 (West 2000).

As noted above, defendant's indictment alleged that he violated section 18-4(a)(3) where, *inter alia*, he was "armed with a dangerous weapon, to wit: a bludgeon." 720 ILCS 5/18-4(a)(3), 33A-1(c)(3) (West 2000).

¶ 19    In comparison, section 33A-2(a) of the armed violence statute provides, in pertinent part:

> "§ 33A-2. Armed violence—Elements of the offense.

---

[1]"§ 18-3. Vehicular hijacking. (a) A person commits vehicular hijacking when he or she takes a motor vehicle from the person or the immediate presence of another by the use of force or by threatening the imminent use of force." 720 ILCS 5/18-3 (West 2000).

(a) A person commits armed violence when, while armed with a dangerous weapon, he commits any felony defined by Illinois Law, except *** armed robbery, or aggravated vehicular hijacking.[2]" 720 ILCS 5/33A-2(a) (West 2000).

For purposes of the armed violence statute, a person is considered "armed with a dangerous weapon" when he or she "carries on or about his or her person or is otherwise armed with a Category I, Category II, or Category III weapon." 720 ILCS 5/33A-1(c)(1) (West 2000). Category I weapons consist of various firearms, while category II weapons include additional types of firearms, certain kinds of knives, blade-type weapons, "or other deadly or dangerous weapon or instrument of like character." 720 ILCS 5/33A-1(c)(2) (West 2000). Category III weapons are defined as "a bludgeon, black-jack, slungshot, sand-bag, sand-club, metal knuckles, billy, or other dangerous weapon of like character." 720 ILCS 5/33A-1(c)(3) (West 2000).

¶ 20    The proportionate penalties clause may be used to judge the penalty imposed upon conviction for one offense in relation to another only if their elements are identical. See *People v. Sharpe*, 216 Ill. 2d 481, 523, 526 (2005). As previously noted, " '[i]f the legislature determines that the exact same elements merit two different penalties, then one of these penalties has not been set in accordance with the seriousness of the offense.' " and is invalid. *Clemons*, 2012 IL 107821, ¶ 30 (quoting *Sharpe*, 216 Ill. 2d at 522); see also *Christy*, 139 Ill. 2d at 181. However, we agree with the State that this principle has no application here because, at the time defendant committed his offense, the elements of AVH/DW were not identical to the elements of armed violence based upon vehicular hijacking with a category III weapon. Rather, as discussed below, we find that many objects, including the BB gun defendant possessed in this case, satisfy the "dangerous weapon" element of AVH/DW, but not the "Category III weapon" element of armed violence with a category III dangerous weapon. See *People v. Davis*, 199 Ill. 2d 130, 141 (2002) (holding a BB/pellet gun did not qualify as a "bludgeon" under the armed violence statute); see also *People v. Myers*, 101 Ill. App. 3d 1073, 1075 (1981) (holding that "what constitutes a dangerous weapon for armed robbery does not necessarily constitute a dangerous weapon under the armed violence statute, wherein categories of dangerous weapons are specified").[3]

¶ 21    "Dangerous weapon" is not defined in either the AVH/DW statute or the armed robbery statute, but is derived from common law. Indeed, a review of the case law shows that the common-law definition of a dangerous weapon is in fact rooted in this court's discussion of

---

[2]As stated, among the felony exceptions to section 33A-2 is the offense of "aggravated vehicular hijacking." However, we agree with the appellate court that while aggravated vehicular hijacking cannot serve as a predicate offense to armed violence, the statutory version applicable here did not specifically bar vehicular hijacking from forming the basis of that offense. Therefore, aggravated vehicular hijacking can properly be compared with armed violence based upon simple vehicular hijacking for purposes of defendant's proportionate penalties claim. 2014 IL App (1st) 120913, ¶ 9 n.1 (citing *Clemons*, 2012 IL 107821, ¶ 14); see also *People v. Taylor*, 2015 IL 117267, ¶¶ 16-17 (reaffirming the holdings in *Hauschild* and *Clemons* that offenses such as robbery and vehicular hijacking were eligible to serve as predicates for armed violence prior to 2007).

[3]We include armed robbery in our discussion as most of the case law dealing with the identical elements test involves armed robbery, and the characteristics of the armed robbery and AVH/DW statutes are the same for the purposes of this case.

what constitutes a deadly weapon. See *People v. Ross*, 229 Ill. 2d 255, 272-76 (2008) (discussing *People v. Dwyer*, 324 Ill. 363 (1927), and its progeny in analyzing the dangerous weapon element of the armed robbery statute). As this court concluded in *People v. Skelton*, 83 Ill. 2d 58, 66 (1980), what constitutes a dangerous weapon is a question of fact and includes any object sufficiently susceptible to use in a manner likely to cause serious injury.

¶ 22        This court, in *Skelton*, further articulated the purpose for such a broad definition, stating:

> "[M]any objects, including guns, can be dangerous and cause serious injury, even when used in a fashion for which they were not intended. Most, if not all, unloaded real guns and many toy guns, because of their size and weight, could be used in deadly fashion as bludgeons. Since the robbery victim could be quite badly hurt or even killed by such weapons if used in that fashion, it seems to us they can properly be classified as dangerous weapons although they were not in fact used in that manner during the commission of the particular offense. It suffices that the potential for such use is present; the victim need not provoke its actual use in such manner." *Id.*

In other words, the definition of dangerous weapon for purposes of the AVH/DW statute includes not only objects that are *per se* dangerous, but objects that are used or may be used in a dangerous manner. See *People v. Ross*, 229 Ill. 2d 255, 275 (2008). Here, the dangerous weapon defendant was armed with during the commission of AVH/DW, a BB gun, fits into the latter category.

¶ 23        In contrast, the dangerous weapons categories in the armed violence statute are defined by the statute and therefore limited to the weapons identified by the statute. See 720 ILCS 5/33A-1(c) (West 2000) (wherein the legislature defines "armed with a dangerous weapon for purposes of this Article," as being armed with a category I, II or III weapon, and thereafter enumerates the weapons in each category). Accordingly, in *People v. Davis*, 199 Ill. 2d 130, 141 (2002), this court held, *inter alia*, that a BB/pellet gun was not a bludgeon or other dangerous weapon of like character under the armed violence statute, reasoning:

> "A category II dangerous weapon is defined in the statute as 'a bludgeon, blackjack, slungshot, sand-bag, sand-club, metal knuckles, billy or other dangerous weapon of like character.' 720 ILCS 5/33A–1(c) (West 1992).[4] *** [P]ellet and BB guns are not specifically named in this listing. Furthermore, although a metal pellet/BB pistol might be capable of being used as a bludgeon, it is not typically identified as such and, under the doctrine of *ejusdem generis*,[5] cannot be interpreted to be 'of like character' to the bludgeon-type weapons included in the category II listing." *Id.*

---

[4]In the version of the armed violence statute before this court in *Davis*, a bludgeon was a category II weapon (720 ILCS 5/33A-1(c) (West 1992)), while, as we have noted, in the version of the statute at issue here, a bludgeon is a category III weapon (720 ILCS 5/33A-1(c)(3) (West 2000)).

[5]Under the doctrine of *ejusdem generis*, when a statutory clause specifically describes several classes of persons or things and then includes " 'other persons or things,' " the word " 'other' " is interpreted as meaning " 'other such like.' " *Davis*, 199 Ill. 2d at 138 (quoting *Farley v. Marion Power Shovel Co.*, 60 Ill. 2d 432, 436 (1975)). See also *People v. Rutledge*, 104 Ill. 2d 394, 397 (1984) (acknowledging that, pursuant to, *inter alia*, the doctrine of *ejusdem generis*, the legislature did not intend that firearms be included in the term "or any other dangerous or deadly weapon," as used in section of unlawful use of weapons statute under which the defendant was charged (internal quotation marks omitted)).

¶ 24	Therefore, as in *Davis*, the BB gun with which defendant herein was armed *cannot* be considered a bludgeon or other dangerous weapon of like character under the armed violence statute. However, defendant's BB gun *does* qualify as a dangerous weapon other than a firearm under the common-law definition applicable to statutory offenses such as aggravated vehicular hijacking and armed robbery. See, *e.g.*, *People v. Johnson*, 323 Ill. App. 3d 284 (2001) (metal BB gun used to threaten and strike rape victim was a dangerous weapon within the meaning of the offense of armed robbery); *People v. Hill*, 47 Ill. App. 3d 976, 977-78 (1977) (unloaded metal air pistol used to intimidate victim of robbery, although not a dangerous weapon *per se*, could be used as dangerous weapon and supported conviction for armed robbery).

¶ 25	Thus, contrary to the appellate court's finding below, the elements of AVH/DW, which require, *inter alia*, proof that defendant was "armed with a dangerous weapon, other than a firearm" in violation of section 18-4(a)(3) of the Code (720 ILCS 5/18-4(a)(3) (West 2000)), *are not* identical to the elements of armed violence, which require, *inter alia*, proof that defendant committed a qualifying felony while armed with a category III weapon in violation of sections 33A-1 and 33A-2 of the Code (720 ILCS 5/33A-1, 33A-2 (West 2000)). Under *Davis*, the BB gun with which defendant was armed, like many objects that qualify as a dangerous weapons for purposes of AVH/DW, cannot satisfy the category III weapon element of the armed violence statute.[6] Consequently, we hold that the appellate court erred in concluding that a violation of the proportionate penalties clause under the identical elements test occurred in this case. See 2014 IL App (1st) 120913, ¶ 6.

¶ 26	In support of this holding, we note that our legislature, concerned with the possession of *weapons* during the commission of felonies (*People v. Donaldson*, 91 Ill. 2d 164, 168 (1982)), adopted the armed violence statute to "discourage those who contemplate a felonious act beforehand from carrying a *weapon* when they set forth to perform the act." (Emphasis added.) *People v. Alejos*, 97 Ill. 2d 502, 509 (1983); *Davis*, 199 Ill. 2d at 139. Therefore, the specific intent of the legislature in creating the armed violence statute would be defeated if objects other than those actual weapons defined and listed therein were considered to be "dangerous weapons" within the statute's three categories. Indeed, the legislature has the power to define the same phrase, *e.g.* "dangerous weapon," differently in distinct statutes. As our appellate court has stated:

> "It is *** fundamental that the legislature has the power to articulate reasonable definitions of any terms within its enactment ***. (*Chicago-Midwest Meat Association v. City of Evanston* (1981), 96 Ill. App. 3d 966, 969; *Bohm v. State Employees' Retirement System* (1949), 404 Ill. 117, 88 N.E.2d 29.) In addition, separate acts with separate purposes need not define similar terms in the same way, but, rather, the same word may mean one thing in one statute and something different in another, dependent upon the connection in which the word is used, the object or purpose of the statute and the consequences which probably will result from the proposed construction. *People ex rel. De Boer v. Geary* (1944), 323 Ill. App. 32, 39, 54 N.E.2d 840; *Gormley v. Uthe*

---

[6]We note that following the legislature's 2007 amendment to the armed violence statute, which excluded as a predicate "any offense that makes the possession or use of a dangerous weapon either an element of the base offense, an aggravated or enhanced version of the offense, or a mandatory sentencing factor that increases the sentencing range," the identical elements question raised herein is no longer an issue. Pub. Act 95-688 (eff. Oct. 23, 2007).

(1886), 116 Ill. 643, 648, 7 N.E. 73, *affirmed* (1890), 133 U.S. 655, 33 L. Ed. 776, 10 S. Ct. 415." *Mack v. Seaman*, 113 Ill. App. 3d 151, 154 (1983).

See also *In re Marriage of Dodds*, 222 Ill. App. 3d 99, 101-02 (1991).

¶ 27 Accordingly, as an examination of *Skelton* and *Davis* reveals, the common-law definition of "dangerous weapon" is broader than the definition of "dangerous weapon" in the armed violence statute. Given the foregoing, we conclude that an object, regardless of how it is used, cannot be considered a dangerous weapon for purposes of the armed violence statute unless it is included in the three categories of weapons set forth in that statute. Further, we agree with the State that nothing contained in this court's decisions in *Clemons* or *Hauschild* precludes this conclusion. In sum, both *Clemons* and *Hauschild* dealt with the offense of armed robbery with a firearm, and firearms are included in the definition of category I and category II weapons under the armed violence statute (720 ILCS 5/33A-1(c)(2) (West 2000)). *Clemons*, 2012 IL 107821, ¶¶ 3, 22; *Hauschild*, 226 Ill. 2d at 81-82, 85-86. Thus, the elements of the offenses therein were identical and the defendant could be charged with either armed robbery with a firearm or armed violence predicated on robbery with a category I or II weapon, yet the offenses had disparate sentences. *Clemons*, 2012 IL 107821, ¶ 22 (citing *Hauschild*, 226 Ill. 2d at 86). In contrast, as demonstrated in *Davis* and in this case, not every object that qualifies as a "dangerous weapon, other than a firearm" under section 18-4(a)(3) of the aggravated vehicular hijacking statute qualifies as a category III weapon under the armed violence statute. Thus, while proportionate penalties violations were properly found in *Hauschild* and *Clemons* under the identical elements test, here, no such finding can be made where the "dangerous weapon" element was satisfied solely as to the offense of AVH/DW and not as to the offense of armed violence.

¶ 28 Defendant next argues before this court that the State is equitably barred from asserting that, as charged herein, section 18-4(a)(3) of the aggravated vehicular hijacking statute and section 33A-2(a) of the armed violence statute do not have identical elements. We disagree. Defendant notes this court's well-established holding that "a party may not request to proceed in one manner and then later contend on appeal that the requested course of action was in error." *People v. Denson*, 2014 IL 116231, ¶ 17 (citing *People v. Lucas*, 231 Ill. 2d 169, 174 (2008)). Nor may a party "advance a theory or argument on appeal that is inconsistent with the position taken below." *Denson*, 2014 IL 116231, ¶ 17 (citing *People v. Henderson*, 2013 IL 114040, ¶ 23). Defendant thus argues that where the State's position at trial, on direct appeal, and before the appellate court below was that defendant was armed with "a bludgeon," and the State maintained throughout all these proceedings that defendant was charged with, and convicted of, being armed with "a bludgeon," the State cannot now assert that the weapon involved was not "a bludgeon." However, while we agree with these factual assertions, they are not inconsistent with either the State's present claim, or its position taken below.

¶ 29 This case began with the State securing an indictment for violating section 18-4(a)(3) of the aggravated vehicular hijacking statute, "in that he, knowingly took a motor vehicle, to wit: a 2000 Ford, from the person or immediate presence of [Ana] Diaz, by the use of force or by threatening the imminent use of force and [defendant] was armed with a dangerous weapon, to wit: a bludgeon." Following defendant's conviction of this charge by a jury, he argued on direct appeal that "the State failed to prove aggravated vehicular hijacking beyond a reasonable doubt because it did not prove that he committed the offense with a dangerous weapon other

than a firearm." *People v. Ligon*, 365 Ill. App. 3d 109, 115 (2006) (*Ligon I*). In rejecting this contention, *Ligon I* first quoted *People v. Thorne*, 352 Ill. App. 3d 1062 (2004), wherein the court, in assessing the definition of the common-law term "dangerous weapon" in the context of the robbery statute, stated:

> " '[O]ur courts have defined the term by dividing objects alleged to be "dangerous weapons" into four categories. [Citation.] The first category consists of objects that are dangerous *per se*, such as knives and loaded guns. [Citation.] The second category consists of objects that are never dangerous weapons, such as a four-inch plastic toy gun. [Citation.] The third category consists of objects that are not necessarily dangerous weapons but can be used as such, for instance, an unloaded gun or a toy gun made of heavy material, which are incapable of shooting bullets but can be used as a bludgeon [citation] or, as another example, fingernail clippers with a sharpened file [citation]. The fourth category consists of objects that are not necessarily dangerous but were actually used in a dangerous manner in the course of the robbery.' *Thorne*, 352 Ill. App. 3d at 1070-71." *Ligon I*, 365 Ill. App. 3d at 116.

The appellate court in *Ligon I* found that the State did not argue at trial or therein, on direct appeal, that the BB gun was a dangerous weapon, *per se*, nor was there evidence that the BB gun was actually used in a dangerous manner. *Id.* at 116-17. Thus, the BB gun in the present case fell into the third category of common-law dangerous weapons, and "[c]ase law provides that an unloaded BB gun may be a dangerous weapon if it can be used in a dangerous manner, for example, as a bludgeon." *Id.* at 117. Accordingly the question of whether the BB gun herein could be used as a "dangerous weapon other than a firearm" to establish AVH/DW under section 18-4(a)(3) was a question of fact for the jury to determine. *Id.* at 115. Having examined the BB gun, the appellate court concluded, "we cannot say that the jury's finding that it could have been used as a dangerous weapon was erroneous." *Id.* at 117. Further, as earlier noted, defendant's petition for leave to appeal was denied by this court. *People v. Ligon*, 221 Ill. 2d 658 (2006) (table).

¶ 30    Based on our review of the record, we agree that defendant was properly convicted of AVH/DW while using a BB gun as a common-law dangerous weapon of the third type. Accordingly, it is irrelevant that the indictment used the term "bludgeon" instead of BB gun, as the two are interchangeable for purposes of that statute. See *Thorne*, 352 Ill. App. 3d at 1070 (an example of an object that is not necessarily a dangerous weapon, but can be used as such, is an unloaded gun or toy gun made of heavy material which can be used as a bludgeon). We conclude that where the State has consistently contended at trial, on direct appeal, and before both the appellate court and this court in defendant's section 2-1401 proceedings that he committed AVH/DW while armed with an object that *could be used as a bludgeon*, it is not inconsistent for the State to also argue that the BB gun was not an actual "bludgeon" for purposes of the armed violence statute. See *Ligon I*, 365 Ill. App. 3d at 118-19 (rejecting defendant's claim that there was a fatal variance between the indictment alleging he was armed with a bludgeon and the proof at trial showing he was armed with a BB gun). Thus, the State was not equitably barred from raising that issue herein.

¶ 31                                    CONCLUSION

¶ 32        We hold, based upon the foregoing, that the appellate court erred in finding a proportionate penalties violation under the Illinois Constitution and, accordingly, in vacating defendant's sentence for aggravated vehicular hijacking with a dangerous weapon, other than a firearm, and remanding for resentencing. In other words, we hold that the appellate court erred in reversing the judgment of the trial court which denied defendant's section 2-1401 petition for relief from judgment alleging a proportionate penalties violation. While the trial court denied defendant's section 2-1401 petition for other reasons, this court may affirm the trial court's judgment on any basis established by the record. *In re B.L.S.*, 202 Ill. 2d 510, 520 (2002); see also *In re Detention of Stanbridge*, 2012 IL 112337, ¶ 74; *People v. Brownlee*, 186 Ill. 2d 501, 511 (1999). Therefore, defendant's conviction for the Class X offense of aggravated vehicular hijacking with a dangerous weapon, other than a firearm (720 ILCS 5/18-4(a)(3) (West 2000)), is affirmed, as is his mandatory life sentence imposed as an adjudged habitual criminal under section 33B-1 of the Code (720 ILCS 5/33B-1(a), (e) (West 2000)).

¶ 33        Appellate court judgment reversed.

¶ 34        Circuit court judgment affirmed.